Michael A. Galpern
Andrew P. Bell
LOCKS LAW FIRM, LLC
457 Haddonfield Road, Ste 500
Cherry Hill, NJ 08002
(856) 663-8200
  - and -
747 Third Avenue, 37th Floor
New York, NY 10017
(212) 838-3333
www.lockslaw.com

Attorneys for Plaintiffs and the Class

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA PERROTTA and MICHAEL PERROTTA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LG ELECTRONICS USA, INC., a Delaware Corporation, LG ELECTRONICS, INC., and JOHN DOES 1-10 (presently known individuals, partnerships, companies and/or other entities),<br><br>Defendants. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL**<br><br>1. Violation of the NJ Consumer Fraud Act<br>2. Violation of the NJ Truth in Consumer Contract, Warranty and Notice Act<br>3. Breach of Contract<br>4. Unjust Enrichment<br>5. Breach of Implied Warranty of Merchantability<br>6. Breach of Express Warranty<br>7. Fraudulent Concealment<br>8. Intentional Misrepresentation<br>9. Punitive Damages<br>10. Alternatively, Violation of States' Deceptive Practices Acts |

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

FACTS COMMON TO CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     Background to ENERGY STAR® Program and "French Door" Refrigerators . . . . . . . . 8

     Defendants' Marketing and Sale of the Affected Models . . . . . . . . . . . . . . . . . . . . . . 11

     The Department of Energy Involvement and Agreement . . . . . . . . . . . . . . . . . . . . . 15

     Defendants' Fraudulent Misconduct Subsequent to Negotiations with the DOE . . . . . . 18

     Individual Factual Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

NEW JERSEY'S SUBSTANTIVE LAW APPLIES TO THE NATIONWIDE CLASS . . . . . . 23

FIRST COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

SECOND COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

THIRD COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

FOURTH COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

FIFTH COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

SIXTH COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

SEVENTH COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

EIGHTH COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

NINTH COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

NOTICE TO ATTORNEY GENERAL OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . 56

i

Plaintiffs, Lisa Perrotta and Michael Perrotta (collectively "Plaintiffs"), by and through their attorneys, LOCKS LAW FIRM, LLC, on behalf of themselves and all other persons and entities similarly situated, allege as follows:

## INTRODUCTION

1.   This is a class action lawsuit against Defendants LG Electronics USA, Inc. ("LG-USA"), and LG Electronics, Inc., ("LG") (collectively "Defendants") for violations of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 58:8-1, *et seq.*, for violations of the New Jersey Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. §§ 56:12-15, *et seq.* (TCCWNA), breach of contract, unjust enrichment, breach of implied warranty of merchantability, breach of express warranty, fraudulent concealment, intentional misrepresentation, punitive damages, and alternatively, for violations of states' consumer fraud/deceptive practices acts, all brought on behalf of the Class and subclasses as defined herein.   Plaintiffs seek injunctive, monetary and/or other relief against Defendants for the reasons set forth below.

2.   Defendants manufactured, designed, marketed, advertised, and sold ten (10) French-door refrigerator models under the brand name "LG", specifically LG Model Numbers LFX25950, LFX25960, LFX25971, LFX23961, LFX21960ST, LFX21971ST, LFX21980ST, LFX25980ST, LMX21981ST, and LMX25981ST (collectively "**Affected Models**").  Each contained an inaccurate Energy Guide label and an "Energy Star" label.

3.   Defendants rigged and falsified the energy efficiency tests on the **Affected Models** by deliberately disabling key components of the icemakers in those models during energy testing, which resulted in significant underreporting of energy

consumption. Defendants misrepresented the energy efficiency of these refrigerators by promoting them as Energy Star compliant, labeling them with the ENERGY STAR® logo and by understating their energy consumption on the ENERGYGUIDE labels required by federal law.   In fact, the **Affected Models** did not meet the ENERGY STAR® standards for energy efficiency, and some models did not even meet the minimum standards for energy efficiency under federal law.

4.   ENERGY STAR® refrigerators are required by the U.S. Department of Energy ("DOE") to use 20% less energy than standard models. They are more expensive than standard models, but they come with the promise of reduced energy bills that, over time, will generate enough savings to recoup the higher price. This is the fundamental bargain the ENERGY STAR® program offers: the consumer pays a higher up-front price initially, but the consumer saves more on their energy bills over the long-haul.

5.   LG-USA, with the knowledge and assent of LG, rigged testing and misrepresentations destroyed that bargain.   For Plaintiffs and Class members who purchased the **Affected Models**, the promised savings from reduced energy bills never came.  Instead, Plaintiffs and Class members were required to pay both a higher up-front price due to the substantial price premium that ENERGY STAR® refrigerators command and higher energy bills over the refrigerator's life, since its actual energy consumption is substantially higher than what was promised.  Plaintiffs and Class members paid a higher initial price for the refrigerator and they will pay higher energy bills every month, month after month, year after year, for as long as the refrigerator remains in use.

6.     Despite the fact that Defendants promoted and advertised that their products are "energy efficient" according to published Energy Star guidelines, the **Affected Models** did not and do not operate as advertised, resulting in higher energy consumption, higher operating costs, higher carbon output and a larger total set of greenhouse gas (GHG) emissions caused by the product ("carbon footprint").

7.     Defendants knew that the **Affected Models** did not comply with ENERGY STAR® standards and knew that the marketing of the **Affected Models** under the ENERGY STAR® logo and label was unwarranted, deceptive and illegal.

8.     Subsequent to a DOE investigation and litigation regarding Defendants' conduct, Defendants entered into a settlement agreement dated November 14, 2008 with the DOE ("**DOE Settlement**", annexed hereto as Exhibit "A"), which provided, *inter alia*, for Defendants to offer consumers a credit reflecting past incremental energy usage related to their **Affected Model**, measured according to a methodology set forth in Appendix A to the **DOE Settlement**.

9.     In addition, Defendants promised to offer consumers, pursuant to the **DOE Settlement**, an annual credit that was required to reflect the future energy consumption difference occurring during the average useful life (which was defined in the **DOE Settlement** as fourteen (14) years from the date of purchase) of each such **Affected Model**, measured according to a methodology set forth in Appendix B to the **DOE Settlement**.

10.   In addition, Defendants were required to offer, at no cost to the consumer, product modifications that would then yield improved energy efficiency, as set forth in paragraph 5 of the DOE Agreement.

11.   The energy credits to be provided for in the **DOE Settlement** were in the form of checks from LG to each purchaser of an **Affected Model**, with an initial check issued by December 19, 2008, and subsequent checks to be issued annually to consumers on the anniversary date of the issuance of the first check to cover the remaining years of useful life of the **Affected Model**, in full satisfaction of these credits.

12.   Instead of complying with the **DOE Settlement**, Defendants actively defrauded the Plaintiffs and Class members by sending them letters and checks in which Defendants offered less money than the amounts to which Plaintiffs and Class members were entitled under the **DOE Settlement**, by failing to modify, or even to offer to modify, the **Affected Models**, and by seeking full releases of Defendants' obligations under the **DOE Settlement** and other claims that Plaintiff and putative Class members had or may have had against Defendants.

13.   Prior to the letters and checks sent to Plaintiffs and Class members, they could not have been aware of Defendants' fraudulent use of the ENERGY STAR® program and any potential claims against Defendants for its conduct alleged herein.

14.   Plaintiffs seek relief in this action individually, and as a class action on behalf of similarly situated purchasers of the **Affected Models**, for violations of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 58:8-1, *et seq.*, for violations of the New Jersey Truth in Consumer Contract, Warranty and Notice Act, N.J.S.A. §§ 56:12-15, *et seq.*

(TCCWNA), unjust enrichment, breach of contract, breach of implied warranty of merchantability, breach of express warranty, fraudulent concealment, intentional misrepresentation, punitive damages, and alternatively, for violations of states' consumer fraud/deceptive practices acts. Plaintiffs seek injunctive, monetary and/or other relief against Defendants for the reasons set forth below. At all relevant times alleged in this matter Defendants acted in concert with, and with the knowledge and approval of and/or as the agent of the other within the course and scope of the agency, regarding the acts and omissions alleged.

## PARTIES

15. Plaintiffs Lisa Perrotta and Michael Perrotta are husband and wife and citizens of New Jersey. They reside at 177 Chipmunk Hill, Mountainside, New Jersey 07092.

16. Defendant LG Electronics USA, Inc. ("LG-USA") is a Delaware corporation with a principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632, where it employs hundreds of people. Defendant LG-USA does substantial business in New Jersey where all decisions related to the testing, labeling and marketing of the **Affected Models** were made and implemented by LG-USA employees and is amenable to personal jurisdiction in New Jersey.

17. Defendant LG Electronics, Inc. ("LG") is a corporation and, upon information and belief, the parent company of LG Electronics USA, Inc. with a principal place of business at LG Twin Towers, 20 Yoido-dong, Youngdungpo-gu, Seoul, South

Korea. LG manufactures thousands of refrigerators per year, a substantial portion of which are offered for sale and/or sold in the State of New Jersey.

18.   The Defendants JOHN DOES 1-10 are the names of presently unknown individuals, partnerships, corporations, companies and/or other entities that are liable to the Plaintiffs and the Class for the misconduct alleged herein, that engaged in the misconduct alleged herein and/or who had managerial and/or supervisory responsibilities over the persons engaged in the misconduct alleged herein.  Plaintiffs reserve the right to amend the Complaint to include these unknown individuals/entities should their identity be revealed in discovery.

### JURISDICTION AND VENUE

19.   This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because there are more than 100 class members and because the amount in controversy, upon information and belief, exceeds five million dollars ($5,000,000) exclusive of interest and costs, and at least one Class member is a citizen of a state different from Defendants, and supplemental jurisdiction of Plaintiffs' state law claims pursuant to 20 U.S.C. 1367.

20.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as Defendant LG-USA is a resident of the State of New Jersey, and Defendants LG and LG-USA do business throughout this State and a substantial part of the events or omissions giving rise to Plaintiffs' claims took place within this judicial district.

21.   The federal courthouse located in Newark, New Jersey is the proper vicinage for this matter because Plaintiffs and LG-USA is located in Englewood Cliffs, New Jersey.

## FACTS COMMON TO ALL CLAIMS

### Background to ENERGY STAR® Program and "French Door" Refrigerators

22.   The Energy Policy and Conservation Act of 1975 ("EPCA") established an energy conservation program for major household appliances. See 42 U.S.C. ' 6291, *et seq.*

23.   The EPCA, and the Energy Policy and Conservation Act of 1978, grant the DOE the authority to regulate the energy efficiency of household appliances, such as refrigerators and freezers, and prescribe minimum energy efficiency standards for these appliances.  Amendments to the EPCA in the National Appliance Energy Conservation Act of 1987 established minimum energy efficiency standards for refrigerator-freezers. 42 U.S.C. ' 6291, *et seq.*

24.   As a joint program in 1992, the United States Environmental Protection Agency ("EPA") and the DOE implemented the Energy Star Program to help consumers "save money and protect the environment through energy efficient products and practices." *See* ENERGY STAR and other Climate Protection Partnerships 2008 Annual Report at p. 1 ("2008 Annual Report") (available at: http://www.energystar.gov/ia/partners/publications/pubdocs/Annual%20Report_122309_to%20EPA_Web.pdf).

25.   For a product to qualify for the Energy Star label it must meet a unique set of specifications to guarantee that the product is energy efficient, is cost-effective and maintains product performance or features.  2008 Annual Report at 23.

26. The EPA explained that the "Energy Star label is designed to clearly identify products . . . that are energy efficient-meaning they lead to lower energy bills and help protect the environment while providing desired features and performance." *See* Energy Star- The Power to Protect the Environment Through Energy Efficiency at p. 3 (http://www.energystar.gov/ia/partners/downloads/energy_star_report_aug_2003.pdf).

27. Refrigerators and freezers qualify for the Energy Star label if they are at least 20% more energy efficient than the minimum efficiency standards set by law. *See* Department of Energy, Energy Star Program Requirements for Residential Refrigerators and/or Freezers (August 3, 2007), at 3-4, available at http://www.energystar.gov/ia/partners/product_specs/program_reqa/refrig_prog_req.pdf.

28. Federal regulations specify the testing criteria that DOE uses to determine the energy efficiency of refrigerators and freezers. The Association of Home Appliance Manufacturers – Standard HRF-1-1979 ("HRF-1") created the operational testing conditions of an industry standard applicable to compliance testing for refrigerator-freezers. HRF-1 also specifies the required operational conditions of the ice maker and related components of a refrigerator-freezer during the testing.

29. A manufacturer is required to affix an Energy Guide label to its exterior depicting the estimated annual energy usage of a refrigerator-freezer based on results from the HRF-1 testing procedure. Energy Guide Labels are affixed to consumer appliances to provide the consumer with the estimated (i) energy consumption of the appliance in a given calendar year; and (ii) provide the consumer with an estimate of the dollar amount it will cost the consumer to operate the appliance during a calendar year.

Manufacturers of consumer appliances such as refrigerators are required to test the appliances extensively in accordance with relevant Department of Energy and Environmental Protection Agency guidelines in order to ensure that the representations contained on a product's Energy Guide labels are true and accurate.

30.   Consumer appliances such as refrigerators may carry an "Energy Star" logo which informs the consumer that the appliance has undergone extensive testing required by and in compliance with Department of Energy and Environmental Protection Agency requirements and has been found to provide the consumer with as good or better performance as other appliances on the market, at approximately the same cost, while using substantially less energy than a non-Energy Star labeled product.

31.   The **Affected Models** are "French Door" models with a bottom drawer freezer and double doors on top for fresh food and offer a through-the-door ice and water service.  The "French Door" model refrigerators are the fastest growing segment of the refrigerator market.

32.   French Door models must use heaters to function properly because the ice-making assembly is located within the fresh food compartment.  The refrigerator's fresh food compartment must be maintained above freezing temperatures and the ice making assembly within it must be maintained below freezing temperatures.

33.   The LG French Door **Affected Models** use two heaters: the "fill tube heater" and the "ice ejection heater."  The fill tube heater carries water to a mold in the icemaker where water is frozen into ice.  The fill tube heater keeps the water from freezing in the fill tube.  The ice ejection heater's purpose is to eject the ice from the

mold into the storage area.  These heaters consume significant amounts of energy even when the ice maker is not actively making ice.

34.  HRF-1 tests require that the icemaker be inoperative during testing meaning that the ice maker is powered on but not actively making ice.  Defendants intentionally disabled the fill tube and ice ejection heaters during HRF-1 energy efficiency testing of its **Affected Models**.  Disabling these components significantly reduced the **Affected Models**' energy consumption.  Defendants, therefore, deliberately underreported the **Affected Models**' energy usage and falsely qualified an Energy Star rating for its **Affected Models**.

### Defendants' Marketing and Sale of the Affected Models

35.  LG and LG-USA are multinational corporations with revenues of or valued at several billions of dollars every year.

36.  LG and LG-USA, together developed the marketing and sale of the **Affected Models**, and upon information and belief, both knew that the **Affected Models** did not comply with ENERGY STAR® standards, but agreed to market them under the ENERGY STAR® logo regardless.

37.  At the time of sale, Defendants provided Plaintiffs and each owner of a Refrigerator with a one-year factory warranty. Upon information and belief, the terms of the factory warranty provided to all customers who purchase a Refrigerator are uniform and unchanging, thus, Defendants have the same obligations to Plaintiffs and the Class and/or subclasses.

38.   Defendants intended that consumers rely on the Warranty, as well as advertising statements made in written and electronic media, including but not limited to the "Specifications" on its website and those of retailers, printed materials, retailer price tags, Energy Guide labels, and other point-of-sale materials pertaining to the **Affected Models**.

39.   Defendants warranted and held themselves out to consumers as producing **Affected Models** that were not only fit for the purpose intended, but were "Energy Star" rated.

40.   Defendants supplied warranty and sales information to third party retailers, who then disseminated the information contained in LG's sales materials to Plaintiffs and, upon information and belief, the Class.

41.   Defendants deliberately concealed material facts regarding the **Affected Models**, including but not limited to: (1) the **Affected Models** were not tested in accordance with the DOE Guidelines and the industry testing standards created by the Association of Home Appliance Manufactures applicable to refrigerator-freezers; (2) the Energy Guide label affixed to the **Affected Models** was false and misleading, under-reporting energy consumption; and (3) the Energy Star logo on the **Affected Models** was false, misleading, and should not have been affixed to the **Affected Models** or on the advertising, printed materials, retail price tags, and other point-of-sale materials.

42.   Defendants were in exclusive possession of this information about the **Affected Models**' dramatically understated energy consumption and value of the **Affected Models**, which were material to Plaintiffs and the Class.

43. Defendants' **Affected Models** were manufactured by LG in Korea and were shipped to the United States for sale in interstate commerce.

44. Defendants' **Affected Models** had a life expectancy of approximately fourteen (14) years.

45. Defendants at all times had a duty to disclose that material information to Plaintiffs and the Class.

46. Defendants knew that they were selling the **Affected Models** to consumers and that the **Affected Models** did not possess the energy saving characteristics and/or met ENERGY STAR® standards Defendants advertised.

47. Even though Defendants knew that the sale of the **Affected Models** to consumers at the price and under the terms set forth would harm purchasers of the **Affected Models**, Defendants disregarded this inevitable harm to such consumers, and deliberately and continually sold and marketed the **Affected Models** even though such model did not possess the energy saving characteristics and/or met ENERGY STAR® standards Defendants advertised

48. Plaintiffs and the Class reasonably expected that the **Affected Models** would perform in accordance with the Energy Guide labels and the Energy Star label affixed to each Refrigerator. Plaintiffs and the Class reasonably expected that the **Affected Models** would not consume significantly more energy than advertised by Defendants.

49. If Defendants had not misrepresented and concealed material information relating to the true energy consumption and environmental impact of the **Affected**

13

**Models**, Plaintiffs and the Class would not have purchased the **Affected Models** on the terms and price offered.

50. Defendants concealed the true energy consumption and environmental impact of the **Affected Models** and mislead and induced consumers to purchase **Affected Models** at a higher price with the specific and deliberate intention of reaping excessive profits as the direct expense of Plaintiffs and the Class.

51. By concealing the true energy consumption and environmental impact of the **Affected Models** and misleading and inducing consumers to purchase **Affected Models** at a higher price, Defendants reaped a tremendous profit, as well as obtained valuable tax breaks and credits, all to the detriment of Plaintiffs and the Class.

52. Defendants have previously taken advantage of consumers' positive perception of Energy Star rated appliances and as of the date of this filing, continues to do so by offering and selling **Affected Models** with misleading Energy Star logos and Energy Guide Labels which misrepresent the true nature of the product consumers are purchasing.

53. Defendants capitalized upon consumer's willingness to pay a premium for an Energy Star product since: "Energy Star has played a pivotal role . . . by showing consumers that *the higher initial cost of these products can be justified by the energy savings every month, year in and year out*." Energy Star – The Power to Protect the Environment Through Energy Efficiency at p. 4 (Emphasis added) (available at: http://energystar.gov/ia/partners/downlowads/energy_star_report_aug_2003.pdf).

54.   In reality, Defendants' **Affected Models** do not save enough energy to be labeled with the Energy Star label and are therefore labeled with false and misleading Energy Guide Labels.

55.   In breach of its duty to properly disclose these facts, Defendants failed to notify Plaintiffs and the Class of the **Affected Models**' failure to meet the advertised energy guidelines that resulted in the following: 1) over-consumption of energy; 2) increased operational costs; and, 3) diminished value to the **Affected Models**.  Instead, Defendants continued to represent that the **Affected Models** were cost-effective, environmentally friendly and properly rated as Energy Star consumer goods.

56.   Despite knowing that the **Affected Models** did not possess the energy saving characteristics and/or met ENERGY STAR® standards it advertised, Defendants intentionally and willfully failed to disclose such information to the Plaintiffs and the Class, marketed the **Affected Models** with knowledge that the ENERGY STAR® advertising was false and misleading, and thereby, sold the Plaintiffs and the Class refrigerators with a diminished value and that did not comply with federal law standards.

### The Department of Energy Involvement and Agreement

57.   In September 2008 Consumer Reports published an article in which it indicated that an independent laboratory performed tests on an LG **Affected Model** and found it consumed 20-35% more energy than Defendants previously reported.

58.   Upon information and belief, Defendants, through one or more of their employees, met with representatives with the DOE, including then DOE General

Counsel, David Hill, in order to assist Defendants in addressing the ENERGY STAR®
issue.

59. During October and November 2008, LG-USA and DOE, with the
assistance and involvement of David Hill, entered into the Agreement whereby LG-USA
was required to immediately withdraw the **Affected Models** from the Energy Star
program. LG-USA was required to alert retailers and Original Equipment Manufacturers
("OEM") supplied by LG-USA of the Agreement and remove all Energy Star logos from
the **Affected Models**, point of sale materials, price tags, Energy Guide labels,
communication materials and LG-USA's website.

60. The **DOE Settlement** was reached based upon false statements and
misinformation provided by the Defendants, specifically, the Defendants falsely
conveyed to the United States Government that their ENERGY STAR® labeling of the
**Affected Models** was made in "good faith" and the result of "confusion", when
Defendants knew that these representations were false and misleading, as the ENERGY
STAR® labeling and marketing was deliberately done despite Defendants knowing that
the **Affected Models** did not comply with the ENERGY STAR® standards.

61. Pursuant to the Agreement, LG-USA was obligated to, through third-party
testing, adopt and implement product modifications that would yield improved energy
efficiency in the **Affected Models** and this improved energy efficiency would have to be
confirmed using testing procedures consistent with the DOE's interpretation of the
operating conditions specified in HRF-1.

62. The Agreement required LG-USA to promptly offer retailers and consumers who had purchased a Refrigerator the opportunity to have the Refrigerator modified, at no cost to them, to incorporate the modifications outlined in preceding paragraph. This was not done.

63. LG-USA was required to halt shipments of the **Affected Models** by November 14, 2008, unless all were modified pursuant to the Agreement. LG was also required to work with its retail partners and OEM customers to modify units in their warehouses (free of charge) in accordance with the modifications described above. It is unknown whether this was done in compliance with the **DOE Settlement**.

64. Pursuant to the Agreement, LG-USA was required to offer consumers of **Affected Models** a credit reflecting past incremental energy usage, as measured pursuant to the methodology set forth in Appendix A of the Agreement. This initial credit was required to reflect the past incremental energy usage over and above the energy usage amount stated on the Energy Guide label prior to modification. This was done in part, but only in a fraudulent and misleading manner as it set forth below.

65. Pursuant to the Agreement, LG-USA was required to offer consumers of its **Affected Models** an annual credit reflecting the future energy consumption difference occurring during the average useful life of the refrigerator, which is defined as fourteen (14) years from the date of purchase by the consumer. The energy credits were required to be in the form of a check from LG to each purchaser of a Refrigerator, with the first check expected to be issued by December 19, 2008, and subsequent checks to be issued annually to consumers on the anniversary date of the issuance of the first check to cover

the remaining years of useful life of the Refrigerator, in full satisfaction of these credits. The credits for future incremental energy usage were to be calculated by using the methodology detailed in Exhibit B of the Agreement.  The value of these credits was required to reflect the measured future incremental energy usage over and above the energy usage amount stated on the Energy Guide label prior to modification. This was not done.

### Defendants' Fraudulent Misconduct Subsequent to Negotiations with the DOE

66.  LG-USA, together with the knowledge and assent of LG, never complied fully with the **DOE Settlement**.

67.  Defendants never offered Plaintiffs or members of the Class, at no cost to them, product modifications pursuant to the Agreement.  Upon information and belief, Defendants implemented no such product modifications to any of the previously sold **Affected Models**.

68.  In the months following the Agreement, LG-USA sent Plaintiffs and the Class members letters in which Defendants stated, in sum and/or substance, that purchasers of the **Affected Models** may be entitled to a cash payment for past energy usage and cash payments for future energy usage, as well as a modification to your refrigerator to make it more energy efficient.

69.  Upon information and belief, Defendants made these promises and representations without any intention of keeping them.

70.  Upon information and belief, Defendants made these promises in order to induce Plaintiffs and Class members to accept the initial checks Defendants had issued

and, contemporaneously therewith, unlawfully attempt to gain a release from all liability as to Plaintiffs and Class members who accepted the checks.

71.   Defendants made these promises knowing that the Plaintiffs and Class members would be financially damaged as a result of Defendants' deceptive and misleading conduct.  Nevertheless, Defendants pro

72.   Subsequently, Defendants sent letters and checks for payment to purchasers of the **Affected Models** in an amount that was significantly less than the past incremental energy usage as measured by the methodology in Appendix A of the Agreement.

73.   Defendants' checks omitted any information from and/or misrepresented information to which purchasers of **Affected Models** from which they could verify that they were being paid in accordance with the **DOE Settlement** or  in accordance with what would have been fair and just compensation for their damages and for Defendants' misconduct.

74.   Defendants' checks did not compensate purchasers of the **Affected Models** for any future excess energy usage and/or consumption by the **Affected Models**.

75.   Defendants' checks did not compensate purchasers for the modifications necessary for their **Affected Models**.

76.   Defendants never compensated Plaintiffs and Class members for future excess energy usage and/or consumption of the **Affected Models**.

77.   Defendants never provided nor compensated Plaintiffs and Class members for the necessary energy efficiency modifications to the **Affected Models**.

78.   Below the Defendants' signature line on the checks Defendants sent to Plaintiffs and purchasers of the **Affected Models** after entering into the Agreement, Defendants inserted language stating: "ACCEPTED AS FULL AND FINAL SETTLEMENT OF ALL CLAIMS."

79.   Defendants never informed and/or misrepresented the existence and/or scope of any claims Plaintiffs and members of the Class may have had at the time Defendants' checks were sent.

80.   Defendants never informed and/or misrepresented Plaintiffs' and Class members' entitlement to be compensated for their damages and/or for Defendants' deliberate misconduct.

81.   Defendants' letters and checks were sent, and the misrepresentations contained therein were made in order to unlawfully and unconscionably deceive Plaintiffs and Class members into granting Defendants releases from liability.  Simply stated, based upon Defendants' statements and omissions, the affected consumers would have no idea what that the Defendants were trying to "buy off" and/or settle potential claims held by Plaintiffs and Class members through these deceptive and misleading letters and checks.

82.   Defendants' letters and checks were sent even though Defendants and/or their employees specifically knew that Plaintiffs and other purchasers of the **Affected Models** would be harm as a result of Defendants' conduct.

83.   As a result of Defendants' misconduct in misrepresenting and/or omitted information concerning Plaintiffs' and Class members' rights and/or claims, Defendants'

purported "settlement of all claims" as set forth on the checks are invalid, voidable, and illegal.

84.   Defendants' misconduct in contacting Plaintiffs and Class members about the refrigerators was done, upon information and belief, with the specific intent of preventing the consumers of the **Affected Models** from bringing suit against Defendants for the misrepresentations regarding the energy consumption by the **Affected Models**.

85.   Purportedly pursuant to the DOE Agreement, Defendants then issued checks to Plaintiffs and the Class members, which, when accepted and cashed by them, constituted the formation of contracts between Defendants and Plaintiffs and Putative Class members.

86.   Alternatively, Plaintiffs, and all others similarly situated, are third-party beneficiaries of the DOE Agreement because they are entitled to (a) product modifications, (b) reimbursement for past incremental energy usage, and (c) reimbursement for future incremental energy usage under the terms of the Agreement.

### Individual Factual Allegations

87.   On or about December 8, 2006, Plaintiffs Lisa and Michael Perrotta, purchased an LG brand French-door refrigerator, Model No. LFX25960TT, Serial No. 610KRLR00032, for two thousand five hundred sixty one dollars and forty seven cents ($2,561.47) ("Plaintiffs' Refrigerator").  Plaintiffs' Refrigerator was received on or about December 11, 2006.

88.   The refrigerator purchased by Plaintiffs does not operate as advertised, and fails to meet specific Energy Star Guidelines because it uses significantly more energy than stated on the Energy Guide label when Plaintiffs bought it.

89.   The refrigerator purchased by Plaintiffs should have had an anticipated annual kilowatt usage of approximately 579 KWH (kilowatt hours) per year.

90.   The refrigerator purchased by Plaintiffs actually had a rated usage of approximately 1110 KWH per year – almost double what Defendants represented.

91.   In or around early 2009, Plaintiffs received a check for approximately $18.00 from LG-USA purported to reimburse them for past excess energy usage by their LG French-door refrigerator, an **Affected Model**.

92.   Plaintiffs, unaware of all the misconduct and omissions by Defendants, accepted and deposited the check.

93.   Plaintiffs never received any modifications (nor did Defendants ever actually offer to provide such necessary energy efficiency modifications) for their LG French-door refrigerator, an **Affected Model**.

94.   Plaintiffs never received any payments for future excess energy usage by their LG French-door refrigerator, an **Affected Model**.

95.   Plaintiffs have continued to use their LG refrigerator and pay the electric bills, which included the excess energy consumption by the LG refrigerator.

96.   As a result of Defendants' misconduct and illegal acts, Plaintiffs have thereby been damaged.

## NEW JERSEY'S SUBSTANTIVE LAW APPLIES TO THE NATIONWIDE CLASS

97.  New Jersey's substantive laws apply to the proposed Nationwide Class, as defined herein, because Plaintiffs properly bring this Complaint in this District. A United States District Court sitting in diversity presumptively applies the substantive law of the State in which it sits.

98.  New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Nationwide Class Members under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution. New Jersey has a significant contact, or significant aggregation of contacts, to the claims asserted by each Plaintiff, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

99.  LG-USA's headquarters and principal place of business are located in Englewood Cliffs, New Jersey.

100. Critical decisions related to the testing, labeling and marketing of the **Affected Models** were made and implemented by Defendants' employees located in Englewood Cliffs, New Jersey, as well as in other locations in the United States and South Korea. Defendants' employees involved in the testing, labeling and marketing of the **Affected Models** include, but are not limited to: (a) John Herrington, President Sales and former President Home Appliance Division at LG-USA; (b) Teddy Hwang, President of LG-USA; (c) Yong Nam, President and CEO of LG; (d) Timothy McGrady, Environmental Manager at LG-USA; (e) Christopher Johnson, Sr. Manager, Standards and Compliance North America at LG-USA; (f) Yong Namoh, Product Manager for

Refrigeration and Laundry; and (g) Richard Donner, Director of Digital Appliance Standards and Regulatory Compliance at LG-USA.  Upon information and belief, these individuals and the responsible executives and/or officers were responsible for, knew or reasonably should have known of every aspect of the misconduct alleged herein.

101. Defendants, through their management and representatives, negotiated and executed agreements with DOE concerning Defendants' participation in the ENERGY STAR® program. They designed the criteria for and oversaw the execution of the rigged energy efficiency tests. They oversaw the labeling of the **Affected Models** with the ENERGY STAR® label and with Energy Guide labels misrepresenting the estimated yearly electricity use in kilowatt-hours. And they oversaw the retail distribution and marketing of the **Affected Models** throughout the United States.  Many of these relevant Defendants' employees and their departments are located in Englewood Cliffs, New Jersey.

102. LG-USA owns property and conduct substantial business in New Jersey.

103. The revenues Defendants generated from sales of the **Affected Models** were received by Defendants in New Jersey.

104. A significant number of Class members reside in New Jersey and purchased Defendants' **Affected Models** from within New Jersey.

105. The benefits provided by Plaintiffs and Class members which they allege unjustly enriched Defendants, were received by Defendants in New Jersey.

106. Given the fact that LG-USA is headquartered in New Jersey, Defendants will not suffer any hardship or surprise due to the application of New Jersey law in this case.

107. While each of the various jurisdictions from which Class members will be drawn will have an equal interest in compensating their citizens, only New Jersey has the additional interest of regulating a corporation which is headquartered and committed the acts in question within its borders.

108. New Jersey thus has significant contacts and/or a significant aggregation of contacts to the claims asserted by Plaintiffs and all Class members. New Jersey also has a materially greater interest than any other State in enforcing its laws with respect to the conduct of corporations, like LG, located in and doing business principally in New Jersey. The application of New Jersey law to the conduct of corporations based in New Jersey furthers strong fundamental public policies of the State of New Jersey.

109. Alternatively and additionally, the Court may apply the substantive law of the State where Plaintiffs reside and/or purchased Defendants' **Affected Models**.

## CLASS ACTION ALLEGATIONS

110. This action is brought and may properly be maintained as a class action pursuant Rule 23(a) and Rule 23(b)(1), (2) and/or (3) of the Federal Rules of Civil Procedure.   Plaintiff brings this action on behalf of herself and all members of the following class (the "Class"):

> All persons in the United States who purchased an **Affected Model** from January 12, 2008 to the present (or a date to be determined after discovery).

Excluded from both the Class are all Defendants, each of their parents, subsidiaries, authorized distributors and affiliates, and their legal representatives, heirs, successors, and assigns of any excluded person.

111. Plaintiff also brings this action on behalf of herself and all members of the following subclass, which is subsumed within and/or a part of the Class:

> All Class members to whom LG-USA sent a check pursuant to **DOE Settlement.**

(hereinafter the "**Check Subclass**").

112. Plaintiff also brings this action on behalf of herself and all members of the following subclass, which is subsumed with and/or a part of the **Check Subclass**:

> All Class members who negotiated LG-USA's check, which was sent pursuant to **DOE Settlement.**

(hereinafter the "**Settlement Subclass**").

113. All Class and subclass members pray for monetary damages.

114. All Class and subclass members pray for temporary and permanent injunctive relief, declaratory relief because the parties opposing the Class have acted on grounds generally applicable to the Class, thereby making appropriate injunctive relief to the Class and/or the subclasses as a whole.

115. The Class and subclasses are so numerous that joinder of all Class members is impracticable. Plaintiffs believe that there are at least thousands of members of the Class and/or subclasses. Although the exact number and identities of individual Class and/or subclass members are presently unknown, the number of Class and subclass

members can easily be ascertained from Defendants' records and other appropriate discovery.

116. All members of the Class, the **Check Subclass** and **Settlement Subclass** assert claims for violations of the law as more particularly set forth herein.

117. There are questions of fact and law which are common to the Class that predominate over any questions affecting only individual Class members. Among the common questions of law and fact are the following:

a.  Whether Defendants had a policy and/or practice of selling **Affected Models** knowing that the refrigerators' excessive energy usage would have disqualified them from participating in the ENERGY STAR® program;

b.  Whether Defendants tested the **Affected Models** prior to marketing them as ENERGY STAR® compliant according to DOE protocols and/or rules;

c.  Whether Defendants' misconduct was consumer oriented;

d.  Whether Defendants' actions have violated the New Jersey Consumer Fraud Act;

e.  Whether Defendants' actions have violated the New Jersey Truth in Consumer Contract, Warranty and Notice Act;

f.  Whether Defendants created, planned and implemented their advertising and marketing campaign that included promotion of the **Affected**

**Models'** supposed ENERGY STAR® compliance in the State of New Jersey;

g. Whether Defendants had a policy and/or practice of misrepresenting the energy efficiency of the **Affected Models**;

h. Whether Defendants actually misrepresented the energy efficiency of the **Affected Models**;

i. Whether Defendants' misconduct violated federal and/or state laws;

j. Whether Class and/or subclass members suffered an ascertainable loss as a result of the Defendants' misrepresentations;

k. Whether as a result of Defendants' misconduct as alleged herein, Plaintiffs and Class and/or subclass members are entitled to restitution, injunctive and/or monetary relief, and, if so, the amount and nature of such relief.

118. Plaintiffs' claims are typical of the claims of the other members of the Class and both subclasses, inasmuch as all such claims arise out of Defendants' standard policy and practices relating to the same illegal and fraudulent practices of Defendants, and Defendants have acted in the same way toward the Plaintiffs and the Class members. Plaintiffs have no interests antagonistic to the interests of the other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class action and consumer litigation. Accordingly, Plaintiffs are adequate representatives of, and will fairly and adequately protect the interests of the Class and subclasses.

119. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1) because prosecution of separate actions by individual Class members would create a risk of (1) inconsistent or varying adjudications with respect to individual members of the Class and subclasses which would establish incompatible standards of conduct for the Defendants or (2) adjudications with respect to such individual members of the Class and subclasses, which as a practical matter may be dispositive of the interests of other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

120. Class certification is further appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class and/or subclasses, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class and/or subclasses as a whole.

121. Class certification is further appropriate under Fed. R. Civ. P. 23(b)(3) because a class action is an appropriate and superior method for the fair and efficient adjudication of the present controversy inasmuch as common questions of law and/or fact predominate over any individual questions which may arise, and, accordingly, there would accrue enormous savings to both the Courts and the Class in litigating the common issues on a class-wide instead of on a repetitive individual basis and inasmuch as no unusual difficulties are likely to be encountered in the management of this class action in that all questions of law and/or fact to be litigated at the liability stage of this action are common to the Class.

122. The damages suffered by each individual Class member may be disproportionate to the burden and expense of individual prosecution of complex and extensive litigation to proscribe Defendants' conduct and practices.  Additionally, effective redress for each and every Class and/or subclass member against Defendants may be limited or even impossible where serial, duplicate, or concurrent litigation occurs arising from these disputes.  Even if individual Class members could afford or justify the prosecution of their separate claims, such an approach would compound judicial inefficiencies, and could lead to incongruous and conflicting judgments against Defendants.  A class action is superior to any other available method for the fair and efficient adjudication of this controversy, because: (i) common questions of law and fact overwhelmingly predominate over any individual questions that may arise, such that there will be efficiencies to the courts and the parties in litigating the common issues on a class basis rather than on an individual basis; (ii) the damages to some members of the Class and/or subclasses are larger than to others, but all claims are sufficiently small that individual prosecution of the claim would not be an economically viable alternative; (iii) class treatment is desired for optimal deterrence and compensation; (iv) the economies of scale inherent in litigating similar claims on a common basis will enable this case to be litigated on a cost-efficient basis as a class action, especially when compared to repetitive individual actions; (v) no unusual difficulties are likely to be encountered in the management of this class action as the proofs as to liability are common to all Class members; and (vi) this action would be effectively impossible to

bring as individual actions leaving plaintiffs and others similarly situated with no viable remedy.

123. This litigation presents statutory violations and violations of consumer fraud acts and practices claims of the types that have often been prosecuted on a class-wide basis.

124. This lawsuit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of fact and law common to the Class predominate over the questions affecting only individual members of the Class, and a class action is superior to other available means for the fair and efficient adjudication of this dispute.

## <u>FIRST COUNT</u>
## VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT, N.J. STAT. ANN. §§ 56:8-1 *et seq.*

125. Plaintiffs repeat and re-allege each of the foregoing paragraphs of this Complaint as if set forth in full.

126. The New Jersey Consumer Fraud Act ("CFA") provides in pertinent part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale * * * or with the subsequent performance of such person as aforesaid, **whether or not any person has in fact been misled, deceived or damaged thereby**, is declared to be an unlawful practice. N.J.S.A. 56:8-2

127. This Count is asserted on behalf of the nationwide Class and subclasses under New Jersey law.

128. Defendant LG-USA has its corporate headquarters and its principal place of business in New Jersey.

129. Defendant LG-USA is a wholly owned subsidiary corporation of LG.

130. Defendants' scheme to rig the energy efficiency testing and misrepresent the **Affected Models** as ENERGY STAR®-compliant was, upon information and belief, originated and/or implemented, in substantial part, from New Jersey.

131. Plaintiffs and the Class members are "persons" entitled to seek the protection under the CFA.  N.J.S.A. 56:8-1, *et seq.*

132. Defendants' deceptive marketing and advertising campaign in connection with the sale of the **Affected Models** are "advertisements" as contemplated by the CFA.

133. The Defendants are sellers of "merchandise" as contemplated by the CFA.

134. The deceptive acts and practices of Defendants, as set forth herein, have directly, foreseeably, and proximately caused ascertainable damages and injury to Plaintiff and members of the Class in amounts yet to be determined because (a) they would not have purchased the **Affected Models** on the same terms if the true facts concerning their energy consumption had been known; (b) they paid a price premium due to the mislabeling of the refrigerators as ENERGY STAR®-qualified; (c) the **Affected Models** did not perform as promised; and (d) Plaintiffs and Class members have paid and will continue to pay higher energy costs for as long as they continue to use the **Affected Models**.

135. The actions of Defendants constitute acts, uses, or employment by Defendants of unconscionable commercial practices, misrepresentations, or the knowing

concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of merchandise, by Defendants in violation of the CFA. Particularly, Defendants misrepresented the energy usage and/or consumption of the **Affected Models**, fraudulently marketed the **Affected Models** as complying with the ENERGY STAR® program and/or standards when in fact they did not, and fraudulently represented to consumers of the **Affected Models** that the checks provided them purported pursuant to the **DOE Settlement** were fair and adequate compensation for Defendants' misconduct when in fact the compensation was woefully inadequate and contained release language that fraudulently induced Class and/or subclass members to give up purportedly their rights to seek just and fair compensation against Defendants for their misconduct. Accordingly, Defendants have caused economic loss and harm to the Class and/or subclasses as a result of the deceptive and misleading manner in which they acted.

136. As alleged with specificity in this Complaint, Defendants, through deceptive marketing and advertising campaign, made material misrepresentations regarding the **Affected Models** they produced and sold to Plaintiffs and the Class, to induce them into purchasing LG's **Affected Models**.

137. Defendants engaged in a purposeful concealment, suppression and omission of material facts pertaining to the functionality of the **Affected Models**, particularly the manner in which the same deviated from the Energy Star guidelines, with intent that Plaintiffs and the Class rely upon such concealment, suppression or

omission, in connection with the sale and advertisement of continued sales of the refrigerator to unwitting consumers.

138. Defendants' advertisements create an overall impression that is misleading and deceptive to an ordinary reader.

139. Along with others known and unknown, the Defendants intentionally engaged in these deceptive acts and practices.

140. Upon information and belief, Defendants and its agents participated in the deceptive practices alleged in this Complaint by overseeing, directing and otherwise ratifying the improper testing of the **Affected Models** not in accordance with Energy Star requirements or Energy Guide Label requirements, and improperly affixing those labels to the **Affected Models**, to obtain financial benefits for itself.

141. As a result of Defendants' deceptive advertising and marketing campaign, Plaintiffs and the Class were induced to purchase the **Affected Models**.

142. The price paid for the **Affected Models**, the increased energy bills paid by the Plaintiffs and the Class, and the increased carbon emissions related thereto constitute readily ascertainable losses.

143. Moreover, Defendants sent deceptive and misleading letters and/or checks for payments to Plaintiffs and members of the **Check Subclass**, and fraudulently induced the Plaintiffs and members of the **Settlement Subclass** to accept the checks and potentially give away their legal rights to sue Defendants.

144. Defendants further fraudulently induced Plaintiffs and members of the **Settlement Subclass** into giving away their legal rights as third-party beneficiaries under

the terms of the **DOE Settlement** by sending checks for payment "in full and final settlement of all claims."

145. As a result of the Defendants' conduct alleged herein, Plaintiffs and members of the Class and subclasses have suffered ascertainable losses and have been harmed and damaged.

**SECOND COUNT**
**TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT,**
**N.J. STAT. ANN. §§ 56:12-13, *et seq.***

146. Plaintiffs repeat and reallege each of the foregoing paragraph of this Complaint as if set forth in full.

147. This Count is asserted on behalf of the nationwide **Check Subclass** and **Settlement Subclass** under New Jersey law.

148. Defendants gave, displayed, offered and/or entered into contracts, represented by the checks Defendants issued, gave, displayed and/or offered to members of the **Check Subclass** and **Settlement Subclass**, together with their accompanying letters, which violated clearly established legal rights of the Plaintiffs and the Class.

149. As a result of the aforesaid violations, Defendants have violated the New Jersey Consumer Contract, Warranty and Notice Act, N.J.S.A. §§ 56: 12-13 *et seq.*

150. As a result of Defendants violations, Plaintiffs and the members of the **Check Subclass** and **Settlement Subclass** are aggrieved consumers and have been damaged.

151. Pursuant to N.J.S.A. §§ 56:12-17, Defendants are liable to Plaintiffs and each member of the **Check Subclass** and **Settlement Subclass** for a minimum statutory

penalty of $100.00, as well as any actual damages, together with attorneys' fees and costs.

## THIRD COUNT
### BREACH OF CONTRACT THE IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING

152. Plaintiffs repeat and reallege each of the foregoing paragraphs of this Complaint as if set forth in full.

153. This Count is asserted on behalf of the nationwide Class under New Jersey law.

154. The Defendants and Plaintiffs entered into contracts through the Defendants "Terms and Conditions" and "Warranty".

155. The Defendants' "Terms and Conditions" and "Warranty" include not only express written provisions, but also those terms and conditions, which although not formally expressed, are implied by law.  Such implied terms are as binding as the terms that are actually written into the agreement.

156. Alternatively and/or additionally, Plaintiffs and members of the Class were intended third-party beneficiaries of the **DOE Settlement** because both the DOE and Defendants sought to benefit Plaintiffs and the Class, and as such, are entitled to enforce the terms of that agreement.

157. Alternatively and/or additionally, contracts were created between Defendants and Plaintiffs and members of the **Settlement Subclass** when Defendants sent checks, purported pursuant to the DOE Agreement, together with which Defendants

made misrepresentations and omissions to induce Plaintiffs and members of the **Settlement Subclass** to accept the checks in exchange for a release of Defendants.

158. Inherent in all contracts and agreements is an implied covenant that the parties will act in good faith and deal fairly with each other in the performance of their respective covenants and obligations under the contract and will not take any action that will injure the other party or compromise his benefit of the contract.

159. Defendants' obligations to abide by the implied covenant of good faith and fair dealing are/were heightened by the substantial imbalance of power between the Defendants and the consumer Plaintiffs and members of the Class and/or **Settlement Subclass**. This imbalance allowed Defendants to label its products as Energy Star and with improper Energy Guide Labels and to engage in the scheme described in detail in this Complaint and incorporated by reference.

160. Plaintiffs and the Class purchased the **Affected Models**.

161. By purchasing a Refrigerator produced by Defendants, Plaintiffs and the Class had reasonable expectations to receive the benefits of the products purchased as advertised by the Defendants.

162. Furthermore, by purchasing the **Affected Models**, Plaintiffs and the Class had reasonable expectations to be advised of the true extent of any adverse impact the appliance could have on their monthly energy bill and/or any related damage to the environment caused by the **Affected Models** in their current mode of design.

163. Defendants have denied Plaintiffs and the Class the ability to achieve their reasonable expectations in purchasing a Refrigerator manufactured and produced by the Defendants.

164. Defendants have breached the implied covenant of good faith and fair dealing by virtue of the deceptive practices described herein and by other acts described herein independent of the deceptive practices.

165. Defendants' breach of the implied covenant of good faith and fair dealing was a substantive factor causing Plaintiffs and the Class damage.

166. Defendants breached the contracts formed by the "Terms and Conditions" and/or "Warranty" by virtue of the deceptive practices described herein and by other acts described herein independent of the deceptive practices.

167. Defendants breached the contracts formed by Defendants' issuance of and Plaintiffs' and the **Settlement Subclass** members' acceptance of Defendants' checks by failing to modify the **Affected Models** purchased by Plaintiffs and the Class and by failing to compensate them for future excess energy usage and/or consumption by the purchased **Affected Models**.

168. As a result of all the breaches set forth herein, Plaintiffs and the Class were caused damages.

## FOURTH COUNT
## UNJUST ENRICHMENT

169. Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full.

170. This Count is asserted on behalf of the nationwide Class and/or subclasses under New Jersey law.

171. "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences. In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state." *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009), *quoting Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007).

172. "Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which Class members will be drawn," *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. at 58, New Jersey law applies to those claims.

173. Defendants have, by selling **Affected Models** with deceptive and misleading Energy Star logos and Energy Guide Labels, received tens of millions of dollars in revenue from consumers who were induced to purchase the **Affected Models** as a direct result of Defendants' deceptive practices.

174. At the time of the purchase of Plaintiffs' refrigerator, they expected to receive a refrigerator that they reasonably believed complied with the Energy Star Guidelines, as advertised.

175. Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of the **Affected Models**, which retention under these circumstances is unjust and inequitable because Defendants misrepresented that the **Affected Models** complied with ENERGY STAR® standards when in fact they did not, and misrepresented the energy consumption of the **Affected Models**, which caused injuries to Plaintiffs and Class members because (a) they would not have purchased the **Affected Models** on the same terms if the true facts concerning their energy consumption had been known; (b) they paid a price premium due to the mislabeling of the refrigerators as ENERGY STAR®-qualified; (c) the **Affected Models** did not perform as promised; and (d) Plaintiffs and Class members have paid and will continue to pay higher energy costs for as long as they continue to use the **Affected Models**.

176. Defendants have been unjustly enriched in retaining the monies Defendants should have paid Plaintiffs and the **Check Subclass** and **Settlement Subclass** members pursuant to the **DOE Settlement** and/or pursuant to the representations made to Plaintiffs and members of the **Check Subclass** and **Settlement Subclass** when Defendants sent them checks purported to reimburse them for the excessive energy usage and/or consumption by the **Affected Models**.

177. If contracts were not created as set forth in the allegations in paragraph number 157 as to the Plaintiffs and members of the **Settlement Subclass** because there was no meeting of the minds on all the material terms of the contracts, then Plaintiffs and members of the **Settlement Subclass** are entitled to the monies that Defendants did not

pay Plaintiffs and members of the **Settlement Subclass** and withheld and retained from the sales of the **Affected Models** to the Plaintiffs and the **Settlement Subclass**, under this Count.

178. Because Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class and/or **Settlement Subclass** members for its unjust enrichment, as ordered by the Court.

**FIFTH COUNT**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

179. Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full.

180. This Count is brought on behalf of the nationwide Class under New Jersey law.

181. Defendants as the designer, manufacturer, marketers, distributors, and/or sellers impliedly warranted that the **Affected Models** were fit for their intended purpose in that they would function properly as energy efficient refrigerators within the parameters established by federal law and the ENERGY STAR® program.

182. Defendants breached the warranty implied in the contract for the sale of the **Affected Models** in that the **Affected Models** could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose in that they did not function properly as energy efficient refrigerators within the parameters established by federal law and the ENERGY STAR® program. Furthermore, the

**Affected Models** did not conform to the promises or affirmations of fact made on the container and label. As a result, Plaintiffs and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

183. In reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and Class members purchased the **Affected Models** for use as efficient refrigerators within the parameters established by federal law and the ENERGY STAR® program.

184. The **Affected Models** were not altered by Plaintiffs and Class members. The **Affected Models** were defective when they left the exclusive control of Defendants and Defendants knew the **Affected Models** would be purchased and used without additional testing for energy efficiency by Plaintiffs and Class members. The **Affected Models** were defectively designed and were unfit for their intended purpose and Plaintiffs and Class members did not receive the goods as warranted.

185. As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because: (a) they would not have purchased the **Affected Models** on the same terms if the true facts concerning their energy consumption had been known; (b) they paid a price premium due to the mislabeling of the refrigerators as ENERGY STAR®-qualified; (c) the **Affected Models** did not perform as promised; and (d) Plaintiffs and Class members have paid and will continue to pay higher energy costs for as long as they continue to use the **Affected Models**.

## SIXTH COUNT
## INTENTIONAL MISREPRESENTATION

186. Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full.

187. This Count is brought on behalf of the nationwide Class and **Settlement Subclass** under New Jersey law.

188. At all times herein referred to, Defendants were engaged in the business of designing, manufacturing, marketing, distributing, or selling LG French Door TTD Refrigerators which are the subject of the present litigation.

189. Defendants, acting through its officers, agents, servants, representatives, or employees, delivered LG French Door TTD Refrigerators to retail stores, distributors, and various other distribution channels.

190. Defendants willfully, falsely, and knowingly misrepresented material facts relating to the character and quality of LG French Door TTD Refrigerators. These misrepresentations were contained in the energy usage labels and the ENERGY STAR® label affixed to the refrigerators, as well as on their websites, in various media advertising, and point of sale materials disseminated or caused to be disseminated by Defendants, and such misrepresentations were reiterated and disseminated by officers, agents, representatives, servants, or employees of Defendants, acting within the line and scope of their authority, so employed by Defendants to merchandise and market the product. Specifically, Defendants attached energy usage labels as required by federal law and ENERGY STAR® labels to the refrigerators, even though Defendants knew the

reported energy usage rates were only obtained by manipulating and rigging the energy testing procedures.

191. Defendants willfully, falsely, and knowingly misrepresented material facts relating to the issuance of checks purported for past excess energy usage and/or consumption by the **Affected Models**, relating to Defendants' promise that they would pay for future excess energy usage and/or consumption by the **Affected Models**, and/or relating to the modification of purchasers' **Affected Models**.

192. Defendants' representations were made with the intent that the general public, including Plaintiffs and Class, **Check Subclass** and **Settlement Subclass** members, rely upon them. Defendants' representations were made with knowledge of the falsity of such statements, or in reckless disregard of the truth thereof.

193. In actual and reasonable reliance upon Defendants' misrepresentations, Plaintiffs and Class members purchased LG French Door TTD Refrigerators for their intended and reasonably foreseeable purposes. Plaintiffs and Class members were unaware of the existence of facts that Defendants suppressed and failed to disclose. If they had been aware of the suppressed facts, Plaintiffs and Class members would not have purchased the LG French Door TTD Refrigerators.

194. Plaintiffs and Class members are informed and believe, and thereon allege, that Defendants misrepresented material facts with the intent to defraud Plaintiffs and Class members. Plaintiffs and Class members were unaware of the intent of Defendants and relied upon the representations of Defendants in agreeing to purchase the LG French Door TTD Refrigerators.

195. Plaintiffs' and Class members' reliance on the representations of Defendants was reasonable.

196. In actual and reasonable reliance upon Defendants' misrepresentations, Plaintiffs and Class members purchased the LG French Door TTD Refrigerators and experienced energy usage far above the levels represented, the direct and proximate result of which was injury and harm to the Plaintiffs and Class members because: (a) they would not have purchased the **Affected Models** on the same terms if the true facts concerning their energy consumption had been known; (b) they paid a price premium due to the mislabeling of the refrigerators as ENERGY STAR®-qualified; (c) the **Affected Models** did not perform as promised; and (d) Plaintiffs and Class members have paid and will continue to pay higher energy costs for as long as they continue to use the **Affected Models**.

197. In actual and reasonable reliance upon Defendants' misrepresentations, Plaintiff and members of the **Settlement Subclass** accepted Defendants' checks and/or offers to pay for future excess energy usage and/or consumption and/or offers to received modifications of their **Affected Models**, the direct and proximate result of which was injury and harm to the Plaintiffs and members of the **Settlement Subclass** because: (a) they would not have accepted the checks on the same terms if the true facts concerning Defendants' intent not to fulfill terms of the offer had been known; (b) they received less money than was promised in Defendants' offer and no money relating to future excess energy usage and/or consumption by the **Affected Models**; (c) they never received any modifications of the **Affected Models** and therefore Plaintiffs and Class members have

paid and will continue to pay higher energy costs for as long as they continue to use the **Affected Models**.

**SEVENTH COUNT**
**FRAUDULENT CONCEALMENT / NONDISCLOSURE**

198. Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full.

199. This Count is brought on behalf of the nationwide Class under New Jersey law.

200. Defendants fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs, the Class, and all others in the chain of distribution (e.g., concealments and omissions in Defendants' communications with wholesalers, retailers, and others in the chain of distribution that were ultimately passed on to Plaintiffs and the Class) the actual energy consumption of the **Affected Models**.

201. Defendants had exclusive knowledge of the rigged and falsified energy efficiency tests at the time of sale. The defect (excess energy consumption) is latent and not something that Plaintiffs or Class members could, in the exercise of reasonable diligence, have discovered independently prior to purchase, because it is not feasible for individual consumers to conduct their own energy efficiency testing prior to purchase.

202. Defendants had the capacity to, and did, deceive consumers into believing that they were purchasing refrigerators that met ENERGY STAR® standards.

203. Defendants undertook active and ongoing steps to conceal the defect. Plaintiffs are aware of nothing in Defendants' advertising, publicity or marketing

materials that discloses the truth about the defect, despite Defendants' awareness of the problem.

204. The facts concealed and/or not disclosed by Defendants to Plaintiffs and the Class are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) a refrigerator.

205. Defendants had a duty to disclose a proper estimate of the energy consumption of the **Affected Models** at the time of sale, including on the ENERGYGUIDE label required by federal law.

206. Defendants intentionally concealed and/or failed to disclose a proper estimate of the energy consumption of the **Affected Models** for the purpose of inducing Plaintiffs and the Class to act thereon.

207. Plaintiffs and the Class justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchase of the **Affected Models**.

208. Had Plaintiffs and the Class known of the defect they would not have purchased (or would have paid less for) the **Affected Models**.

209. Defendants knew that they would not pay Plaintiffs and Class members for the future excess energy usage and/or consumption by the **Affected Models** and that they would not modify Plaintiffs' and Class members' **Affected Models** at the time that Defendants informed Plaintiffs and the Class members that the **Affected Models'** energy usage did not conform to Defendants' prior representations.

210. Defendants had the capacity to, and did, deceive consumers into believing that Defendants would perform the actions set forth in the prior paragraph.

211. The facts and Defendants' intention not to perform the tasks set forth above were concealed and/or not disclosed by Defendants to Plaintiffs and the Class, are material facts in that a reasonable person would have considered them important in deciding whether to accept Defendants' offer to pay for excess energy usage by the **Affected Models**.

212. Defendants had a duty to disclose the omissions set forth herein, but Defendants intentionally concealed and/or failed to disclose them for the purpose of inducing Plaintiffs and the Class to act thereon.

213. Plaintiffs and the Class justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment.

214. Had Plaintiffs and the Class known of Defendants' intentions they would not have acted upon Defendants' offer.

## EIGHTH COUNT
### PUNITIVE DAMAGES,
### N.J.S.A. 2A:15-5.9, *et seq.*

215. Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full.

216. This Count is brought on behalf of the nationwide Class and/or subclasses under New Jersey law.

217. The damage and harms suffered by Plaintiffs and the Class and/or subclasses as a direct result of Defendants' fraudulent, deceptive and misleading conduct

were actuated by actual malice and/or accompanies by a wanton and willful disregard of Plaintiffs and the Class and/or subclasses who Defendants knew would be harmed by Defendants acts and/or omissions.

218. At the relevant time, Defendants knew that serious harm would be inflicted upon Plaintiffs and the Class and/or subclasses as a direct result of Defendants' conduct as alleged herein.

219. At the relevant time, Defendants disregarded the inevitable damage and harm Plaintiffs and the Class and subclasses would suffer, and went ahead and sold and marketed the **Affected Models** in the fraudulent and/or misleading manner alleged herein and fraudulent induced Plaintiffs and the **Settlement Subclass** to accept the checks, payments and settlement set forth in Defendants' letter and checks.

220. To date, Defendants have failed to reveal their misconduct and fraudulent actions as alleged herein and continue to conceal it from Plaintiffs, the Class and the general public.

221. As a result of Defendants' misconduct and actions alleged herein, Defendants have reaped excessive profits.

222. Upon information and belief, Defendants are multi-billion dollar multinational corporations whose financial conditions would support punitive damages commensurate with their multibillion dollars in assets and net worth.

## NINTH COUNT
## ALTERNATIVELY, FOR VIOLATION OF THECONSUMER FRAUD LAWS OF THE VARIOUS STATES

223. Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs of this Complaint as if set forth in full.

224. This Count is brought in the alternative on behalf of the nationwide Class.

225. Defendants have engaged in unfair competition or unlawful, unfair, misleading, unconscionable, or deceptive acts in violation of the state consumer statutes listed below.

226. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ALA. CODE § 8.19-1, *et seq.*

227. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ALASKA STAT. CODE § 45.50.471, *et seq.*

228. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARIZ. REV. STAT. § 44-1522, *et seq.*

229. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARK. CODE ANN. § 4-88-107, *et seq.*

230. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CAL. BUS. & PROF. CODE § 17200, *et seq.*

231. Defendants have engaged in unfair competition or unfair or deceptive acts or practices or have made false representations in violation of COLO. REV. STAT. § 6-1-101, *et seq.*

232. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CONN. GEN. STAT. § 42-110b, *et seq.*

233. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of DEL. CODE ANN. tit. 6, § 2511, *et seq.*

234. Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. CODE ANN. § 28-3901, *et seq.*

235. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of FLA. STAT. ANN. § 501.201, *et seq.*

236. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of GA. CODE ANN. §10-1-392, *et seq.*

237. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of HAW. REV. STAT. § 480, *et seq.*

238. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IDAHO CODE § 48-601, *et seq.*

239. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILL. COMP. STAT. 505/1, *et seq.*

240. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IND. CODE ANN. § 24-5-0.5-1, *et seq.*

241. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IOWA CODE §714.16, *et seq.*

242. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of KAN. STAT. § 50-623, *et seq.*

243. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of KY. REV. STAT. ANN. § 367.110, *et seq.*

244. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of LA. REV. STAT. § 51:1404, *et seq.*

245. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ME. REV. STAT. tit. 5, § 205-A, *et seq.*

246. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MD. CODE. ANN., COM. LAW § 13-101, *et seq.*

247. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation MASS. GEN LAWS ch. 93A, §1, *et seq.*

248. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MICH. COMP. LAWS § 445.901, *et seq.*

249. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MINN. STAT. § 8.31, *et seq.*

250. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MISS. CODE ANN. § 75-24-3, *et seq.*

251. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MO. REV. STAT. § 407.010, *et seq.*

252. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MONT. CODE ANN. § 30-14-101, *et seq.*

253. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEB. REV. STAT. § 59-1601, *et seq.*

254. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEV. REV. STAT. 598.0903, *et seq.*

255. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. REV. STAT. ANN. § 358-A:1, *et seq.*

256. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. STAT. ANN. § 57-12-1, *et seq.*

257. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. GEN. BUS. LAW § 349, *et seq.*

258. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J.S.A. 56:8-1, *et seq.*

259. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. GEN. STAT. § 75-1.1, *et seq.*

260. Defendants have engaged in unfair competition or unfair or deceptive acts or practices In violation of N.D. CENT. CODE § 51-15-01, *et seq.*

261. Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of OKLA. STAT. tit. 15, § 751, *et seq.*

262. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of OR. REV. STAT. § 646.605, *et seq.*

263. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 PA. CONS. STAT. § 201-1, *et seq.*

264. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. GEN. LAWS § 6-13.1-1, *et seq.*

265. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. CODE § 39-5-10, *et seq.*

266. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. CODIFIED LAWS § 37-24-1, *et seq.*

267. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of TENN. CODE ANN. § 47-18-101, *et seq.*

268. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of TEX. BUS. & COM. CODE ANN. § 17.41, *et seq.*

269. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of UTAH CODE. ANN. § 13-11-1, *et seq.*

270. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of VT. STAT. ANN. tit. 9, § 2451, *et seq.*

271. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of VA. CODE ANN. § 59.1-196, *et seq.*

272. Defendants have engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of WASH. REV. CODE § 19.86.010, *et seq.*

273. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W. VA. CODE § 46A-6-101, *et seq.*

274. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WIS. STAT. § 100.18, *et seq.*

275. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WYO. STAT. ANN. § 40-12-101, *et seq.*

276. The acts, practices, misrepresentations and omissions by Defendants described above, and Defendants' dissemination of deceptive and misleading advertising and marketing materials in connection therewith, occurring in the course of conduct involving trade or commerce, constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of each of the above-enumerated statutes, because each of these statutes generally prohibits deceptive conduct in consumer transactions, and Defendants violated each of these statutes by representing the **Affected Models** as ENERGY STAR®-qualified and by misrepresenting the energy consumption of the **Affected Models**.

277. Plaintiffs and Class and/or subclass members were injured as a direct and proximate result of Defendants' unfair, deceptive and/or unconscionable acts and practices, because: (a) they would not have purchased the **Affected Models** on the same terms if the true facts concerning their energy consumption had been known; (b) they paid a price premium due to the mislabeling of the refrigerators as ENERGY STAR®-qualified; (c) the **Affected Models** did not perform as promised; and (d) Plaintiffs and Class members have paid and will continue to pay higher energy costs for as long as they continue to use the **Affected Models**.

## <u>NOTICE TO ATTORNEY GENERAL OF ACTION</u>

A copy of this Complaint shall be mailed to the Attorney General of the State of New Jersey within ten days after the filing of this Complaint with the Court pursuant to N.J.S.A. 56:8-20.

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants for the following relief:

(a)       An Order certifying the proposed Class and/or subclasses herein and appointing Plaintiffs and the undersigned counsel of record to represent the Class and/or subclasses;

(b)       An Order declaring the Defendants' conduct violates the statutes referenced herein;

(c)       An Order declaring that the any settlements and/or releases as to the **Settlement Subclass** are invalid and void *ab initio*;

(d)       An Order finding in favor of Plaintiffs, the nationwide Class and/or subclasses, on all counts asserted herein;

(e)       An Order awarding Plaintiffs, the Class and/or subclasses compensatory, consequential, and statutory damages and further awarding treble damages pursuant to the CFA claim and further awarding punitive and/or exemplary damages on all other counts asserted herein according to law;

(f)       An Order awarding prejudgment interest on all amounts awarded;

(g)       An Order of restitution and all other forms of equitable monetary relief;

(h)       An Order for injunctive relief as pleaded or as the Court may deem just and proper;

(i)       An Order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses, enhancements and costs of suit; and

(j)       An Order granting such other relief as the Court deems just and equitable.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury as to all issues in this action.

Dated: January 12, 2012

Michael A. Galpern
Andrew P. Bell
LOCKS LAW FIRM, LLC
457 Haddonfield Road, Ste 500
Cherry Hill, NJ 08002
(856) 663-8200
- and -
747 Third Avenue, 37th Floor
New York, NY 10017
(212) 838-3333
www.lockslaw.com

Attorneys for Plaintiffs and the Class