**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA PERROTTA, and MICHAEL PERROTTA, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| LG ELECTRONICS USA, INC., a Delaware Corporation, and JOHN DOES 1-10 (presently known [sic] individuals, partnerships, companies, and/or other entities), | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 12-246

**OPINION**

This matter comes before the Court by way of Defendant LG Electronics USA, Inc.'s

("Defendant") Motion to Dismiss Plaintiffs' Amended Class Action Complaint for Damages and

Injunctive Relief ("Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Court has considered the submissions of each party in support of and in opposition to the

instant motion and decides the matter without oral argument pursuant to Rule 78 of the Federal

Rules of Civil Procedure.  For the reasons that follow, Defendant's Motion to Dismiss is granted.

## I.    BACKGROUND[1]

Defendant manufactured, designed, marketed, advertised, and sold ten (10) French-door

refrigerator models under the brand name "LG," specifically LG model number LFX25950,

LFX25960, LFX25971, LFX23961, LFX21960ST, LFX21971ST, LFX21980ST, LFX25980ST,

---

[1] For purposes of the current motion, the Court accepts as true each of the facts set forth in
Plaintiffs' Complaint. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

LMX21981ST, and LMX25981ST (collectively "Affected Models"). Am. Compl. at ¶ 2. Plaintiffs Lisa and Michael Perrotta purchased one of these Affected Model refrigerators for $2,561.47 and received delivery of the refrigerator on December 11, 2006. Am. Compl. at ¶ 90. Plaintiffs now allege that their refrigerator, as well as each of the Affected Models, contained inaccurate Energy Guide labels and were improperly designated "Energy Star" refrigerators. Am. Compl. at ¶ 2.

Federal regulations specify the testing criteria that the Department of Energy ("DOE") uses to determine the energy efficiency of refrigerators and freezers. Am. Compl. at ¶ 28. After testing, manufacturers are required to affix an Energy Guide label to the exterior of their refrigerators and freezers depicting the estimated annual energy usage of the product. Am. Compl. at ¶ 29. These Energy Guide labels provide consumers with the estimated energy consumption of the appliance in a given calendar year as well as the estimated dollar amount it will cost the consumer to operate the appliance each calendar year. Am. Compl. at ¶ 29. Federal regulations also set minimum energy efficiency standards for refrigerators and freezers. Am. Compl. at ¶ 23. If a refrigerator or freezer is at least 20% more energy efficient than this minimum standard, the manufacturer is permitted to attach an Energy Star label to the product. Am. Compl. at ¶ 27. Energy Star labeled products are more expensive than standard models but come with the promise of reduced energy bills that, over time, will generate enough savings to recoup the higher price. Am. Compl. at ¶ 4.

Plaintiffs allege that Defendant improperly manipulated the DOE test results for the Affected Models. Am. Compl. at ¶ 4. Each of the Affected Model refrigerators contains two heaters. Am. Compl. at ¶ 33. There is a fill tube heater, which carries water to a mold in the icemaker where water is frozen into ice. Am. Compl. at ¶ 33. There is also an ice ejection heater

used to eject ice from the ice molds into a storage bin. Am. Compl. at ¶ 33. Each of these

heaters consumes significant amounts of energy, even when the icemaker is not actively making

ice. Am. Compl. at ¶ 33. Plaintiffs allege that Defendant disabled each of these heaters during

DOE testing, thereby significantly reducing the Affected Model's energy consumption and

obtaining an Energy Star rating. Am. Compl. at ¶¶ 33-34.

In September 2008, Consumer Reports published an article stating that an independent

laboratory performed tests on an Affected Model refrigerator and concluded that the refrigerator

consumed 20-35% more energy than Defendant previously reported. Am. Compl. at ¶ 57. The

DOE investigated and identified a disagreement "between DOE and LG concerning whether

LG's application of an aspect of the governing test procedure, as set forth in HRF-1 for

refrigerator-freezers, resulted in the under-reporting of energy consumption data by LG when

certifying compliance with the energy conservation requirements for the Affected Models[.]"

DOE Settlement at 2 [Docket Entry No. 19, Ex. A]. On November 14, 2008, the DOE and

Defendant signed a settlement agreement wherein Defendant agreed, in relevant part, to:

1. "[V]alidate through third-party testing, in conjunction with DOE, product modifications that shall yield improved energy efficiency in the Affected Models;"

2. "[P]romptly offer retailers and consumers who have purchased Affected Models the opportunity to have Affected Models modified, at no cost to them;" and

3. "[O]ffer consumers an annual credit that shall reflect the future energy consumption difference occurring during the average useful life (which is defined as fourteen (14) years from the date of purchase by the consumer) of such affected models . . . in the form of a check from LG to each purchaser of an Affected Model, with the first checks expected to be issued by December 19, 2009, and subsequent checks to be issued annually to consumers on the anniversary date of the issuance of the first check to cover the remaining years of useful life of the Affected Model, in full satisfaction of these credits."

DOE Settlement at 3-4.

Subsequently, Defendant notified customers of Affected Model refrigerators that,

"[b]ased on guidance from the Department of Energy (DOE) about the interpretation of the

testing rules for refrigerators, LG Electronics has changed the energy rating on the model of the

LG refrigerator you purchased." DOE Letter to LG Customer ("Offer Letter"). Defendant

further informed customers that it was providing the following three-part offer for those who

purchased Affected Model refrigerators:

1.  A one-time cash payment to cover the energy cost difference, "calculated from
    the date of purchase until November 14, 2008, between the energy usage of your
    refrigerator measured pursuant to DOE's new guidance for the product and the
    amount listed on the original Energy Guide Label;"
2.  Modification of the customer's refrigerator "at your convenience" and free of
    charge to "lower the energy consumption over the life of the product;" and
3.  "[O]ne cash payment each year over the expected useful life of the product . . .
    [to] cover the yearly energy cost difference between the measured energy usage of
    the refrigerator with the energy-saving modification mentioned above and the
    energy usage listed on the original Energy Guide label at the time your purchased
    the refrigerator."

Offer Letter at 1[Docket Entry No. 33, Ex. A]. Customers were notified that the one-time cash

payment was payment in "full satisfaction of any disputed or unliquidated claims as between LG

and the payee," and that, "[b]y endorsing and cashing the enclosed check, payee forever releases

LG . . . from any claims, whether or not presently known, relating to the sale, labeling or energy

efficiency of the LG refrigerator-freezer to which this payment relates." *See* Offer Letter at 1.

In early 2009, Plaintiffs received their "one-time cash payment" totaling $66.37. Am.

Compl. at ¶ 94. In July 2009, September 2010, and October 2011, Plaintiffs received additional

checks for the "purported future excess energy usage by their LG French-door refrigerator."

Am. Compl. at ¶ 97. Plaintiffs cashed each of these checks, and each check indicated that it was

to be "accepted as full and final settlement of all claims." *See generally* Am. Compl. at ¶ 79.

After receiving those funds, Plaintiffs brought the present action against Defendant for violations

of the New Jersey Consumer Fraud Act, violations of the New Jersey Truth in Consumer

Contract, Warranty and Notice Act ("TCCWN"), breach of contract, unjust enrichment, breach

of implied warranty of merchantability, fraudulent concealment, intentional misrepresentation,

punitive damages, and for violations of states' consumer fraud/deceptive practices acts. Am. Compl. at ¶ 1.

## II.     LEGAL STANDARD

On a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), "[c]ourts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips*, 515 F.3d at 231 (citing *In re Rockefeller Ctr. Props. Secs. Litig.*, 311 F.3d 198, 215-16 (3d Cir. 2002)). But, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Thus, a complaint will survive a motion to dismiss if it contains "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.     ANALYSIS

### A.     Count One – Violation of New Jersey Consumer Fraud Act

As Count One of the Amended Complaint, Plaintiffs allege that Defendant violated the New Jersey Consumer Fraud Act by engaging in deceptive advertising and marketing campaigns for the Affected Model refrigerators, sending "deceptive and misleading letters and/or checks for payments to Plaintiffs . . . [which] fraudulently induced the Plaintiffs . . . to accept the checks

5

and potentially give away their legal rights to sue Defendant," and fraudulently inducing Plaintiffs to give "away their legal rights as third-party beneficiaries under the terms of the DOE settlement by sending checks for payment 'in full and final settlement of all claims.'"  Am. Compl. at ¶¶ 136, 147-48.  For the reasons that follow, each of these claims is dismissed.

### 1.      Deceptive advertising and marketing campaign

Plaintiffs first argue that Defendant violated the New Jersey Consumer Fraud Act by rigging its energy efficiency testing of Affected Model refrigerators, misrepresenting Affected Model refrigerators as Energy Star compliant, and inducing Plaintiffs to purchase these refrigerators under the mistaken belief that the increased costs of these refrigerators would be offset by the resulting energy savings. Am. Compl. at ¶¶ 134, 138.  Defendant moves to dismiss this portion of Plaintiffs' claim under a theory of accord and satisfaction.  *See* Def. Br. at 9.  In so moving, Defendant relies on the Offer Letter and checks it sent to Plaintiffs.  *See* Def. Br. at 10.

Generally, on a motion to dismiss, the court "may not consider matters extraneous to the pleadings.  However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'"  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (citations omitted).  In Plaintiffs' complaint, Plaintiffs rely extensively on Defendant's offer letter and checks.  *See e.g.*, Am. Compl. at ¶¶ 72-75.  Plaintiffs acknowledge receiving these documents and cashing the checks.  *See* Am. Compl. at ¶¶ 72, 94-95, 97.  Moreover, Plaintiffs argue at length that they were fraudulently induced to sign these documents.  *See* Am. Compl. Count 7-8.  Accordingly, the Offer Letter and accompanying checks are within the purview of this Court for purposes of the present motion.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

As discussed above, Defendant sent Plaintiffs this Offer Letter offering to modify Plaintiffs' refrigerator "to make it more energy efficient" and to provide Plaintiffs "annual cash payments for future energy usage." Offer Letter at 1. In addition, Defendants enclosed a check as a "cash payment for past energy usage." *See* Offer Letter at 1. Defendant wrote that the "enclosed check is offered in full satisfaction of any disputed or unliquidated claims . . . regarding any aspect of the purchase or use of any LG refrigerator-freezer to which this payment relates." Offer Letter at 1. And, Defendant warned that, "[b]y endorsing and cashing the enclosed check, payee forever releases LG and its affiliates, agents and representatives from any claims, whether or not presently known, relating to the sale, labeling or energy efficiency of the LG refrigerator-freezer to which this payment relates." Offer Letter at 1.

Plaintiffs acknowledge receiving the Offer Letter and signing the accompanying check. *See* Am. Compl. at ¶¶ 94-95. Plaintiffs also acknowledge receiving and cashing three subsequent checks purportedly provided pursuant to Defendant's promise to "provide annual cash payments for future energy usage." *See* Am. Compl. at ¶ 97; *see also* Def. Br. at 12. Each of these four checks contained language indicating that the payment was "accepted as full and final settlement of all claims." Am. Compl. at ¶ 79. Defendant argues that cashing these checks constituted accord and satisfaction of Plaintiffs' present claim. *See* Def. Br. at 12. The Court agrees.

The three essential elements of an accord and satisfaction defense are as follows: "(1) [a] bona fide dispute as to the amount owed; (2) a clear manifestation of intent by the debtor to the creditor that payment is in satisfaction of the disputed amount; and (3) an acceptance of satisfaction by the creditor." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 166, 183 (D.N.J. 1998). Here, each of these elements is satisfied. First, there is a bona fide dispute as to

7

the amount owed.[2] *See id.* Defendant notified Plaintiffs that Defendant had "changed the energy rating on the model of LG refrigerator" Plaintiffs had purchased. Offer Letter at 1. Plaintiffs and Defendant had never entered into an agreement providing liquidated damages in the event the energy rating changed. Moreover, for the reasons discussed elsewhere in this opinion, Plaintiffs do not have a right to enforce the DOE Settlement Agreement. Accordingly, there was a bona fide dispute as to the amount of damages owed to Plaintiffs, if any, and Defendant proposed a settlement.

Second, there is a "clear manifestation of intent by the debtor to the creditor that payment is in satisfaction of the disputed amount." *See Gunter*, 32 F. Supp. 2d at 183. In the Offer Letter, Plaintiffs indicate that the "check is offered in full satisfaction" of any damages and by endorsing the check "payee forever releases" Defendant from any claims. *See* Offer Letter at 1. Moreover, each of the checks sent to Plaintiffs contain the explicit language "accepted as full and final settlement of all claims." *See* Am. Compl. at ¶ 79. Defendant's intent was clear—to settle any claims related to the "sale, labeling or energy efficiency" of the Affected Model refrigerators. *See* Offer Letter at 1.

Plaintiffs argue that the language on each of the checks was misleading as each denoted that it was to be "accepted as full and final settlement of all claims." *See* Am. Compl. at ¶ 79. Plaintiffs claim that four different checks cannot each be offered as a "full and final settlement. *See* Pls. Br. at 8-9. However, the "check and [Offer Letter] can, and indeed must, be read together." *See A.G. King Tree Surgeons v. Deeb*, 356 A.2d 87, 89 (N.J. Super. 1976). The Offer

---

[2] Plaintiffs argue that the first element of accord and satisfaction is not met because the "purchasers of the Affected Models had no knowledge of the scope and the extent of their potential damages against Defendant" at the time. Pls. Br. at 7. The Court finds this argument unpersuasive. There was clearly a dispute as to the amount owed. Whether Plaintiffs' were fully informed regarding the nature of this dispute goes to Plaintiffs' fraud arguments and is discussed in greater detail in the applicable sections of this Opinion.

Letter indicates that the enclosed check is payment in full for "past energy usage" and that there would be "one cash payment each year over the expected useful life of the product" that will cover in full the energy usage of the refrigerator for that year. Offer Letter at 1. From this language, it is clear that Defendant intended to provide multiple checks and each was intended as payment in full for a certain obligation set forth in the settlement offer. *See* Offer Letter at 1.

Finally, the Court finds that there was "acceptance of satisfaction by" Plaintiffs. *See A.G. King Tree Surgeons*, 356 A.2d at 89. Plaintiffs do not contest that they received, endorsed, and cashed each of the four checks they have received to date. *See* Am. Compl. at ¶¶ 94-95, 97; *see also* Def. Br. at 12. Under New Jersey law, "when a check is tendered as payment for an unliquidated claim on the condition that it be accepted in full payment, the creditor is deemed to have accepted this condition by depositing the check for collection[.]" *Chancellor, Inc. v. Hamilton Appliance Co.*, 418 A.2d 1326, 1327 (N.J. Super. 1980). If the "*check was unacceptable as final settlement, [Plaintiffs'] remedy was to return the check to [D]efendant and sue for the full amount claimed due.*" *Id.* (emphasis in the original). Accordingly, to the extent Count One relies on the marketing, advertising, and sale of Affected Model refrigerators, it is dismissed without prejudice. *See Gunter*, 32 F. Supp. 2d at 183.

## 2.    Fraudulently inducing Plaintiffs to waive their right to sue Defendant

Next, Plaintiffs allege that Defendant violated the New Jersey Consumer Fraud Act when Defendant "fraudulently induced the Plaintiffs and members of the Settlement Subclass to accept the checks and potentially give away their legal right to sue Defendant." Am. Compl. at ¶ 147. To state a cause of action under the Consumer Fraud Act, a plaintiff must allege: (1) an unlawful practice by the defendant; (2) ascertainable loss by plaintiff; and (3) a causal nexus between the first two elements—defendant's allegedly unlawful behavior and the plaintiff's ascertainable

9

loss." *New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 11-12 (N.J. Super. Ct. App. Div. 2003) (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 24 (1994)).

Defendant argues that Plaintiffs failed to adequately plea the existence of an "ascertainable loss." Def. Br. at 12. The Court agrees. Plaintiffs do not contest that they received and cashed four checks. *See* Am. Compl. at ¶ 97; *see also* Def. Br. at 12. Plaintiffs argue that these checks were "provided [to] them purported[ly] pursuant to the DOE Settlement" but were not "fair and adequate compensation for the Defendant's misconduct." *See* Am. Compl. at ¶ 139. However, apart from broad allegations that these checks did not comply with the terms of the DOE Settlement Agreement, Plaintiffs do not provide any support for their assertion that these checks were inadequate. *See generally* Am. Compl. at ¶¶ 129-149. Plaintiffs do not demonstrate how the payment calculations were deficient or the extent to which the payments were inadequate. *See generally* Am. Compl. at ¶¶ 129-149. Under the CFA, Plaintiffs are "required to plead specific facts setting forth and defining the ascertainable loss suffered." *Solo v. Bed Bath & Beyond, Inc.*, No. 06-1908, 2007 U.S. Dist. LEXIS 31088, *9 (D.N.J. April 26, 2007). Accordingly, to the extent Count One relies on Defendant "fraudulently" inducing Plaintiffs to "accept checks and potentially give away their legal right to sue Defendant," it is dismissed without prejudice.[3] *See id.*

---

[3] To the extent Plaintiffs wish to amend the Amended Complaint, Plaintiffs are advised to provide additional evidence of an "unlawful practice." Plaintiffs allege that the checks provided to them were purportedly paid "pursuant to the DOE Settlement." Am. Compl. at ¶ 139. However, there is no evidence in the Defendant's offer letter or subsequent checks indicating that this money was being paid or pursuant to the DOE Settlement or that it is "fair and adequate" compensation pursuant to the terms of the DOE Settlement. *See* Offer Letter at 1. Plaintiffs do not allege any other relevant communications between the parties. *See generally* Am. Compl. at ¶¶ 129-149. And, Plaintiffs never indicate when the Defendant made this allegedly "fraudulent" representation nor what information was conveyed. *See generally id.* The contents of Plaintiffs' allegation amount to nothing more than legal conclusions cloaked in the

### 3. Fraudulently inducing Plaintiffs to give away their legal rights as third-party beneficiaries under the terms of the DOE Settlement

Finally, Plaintiffs allege that Defendant "fraudulently induced Plaintiffs and members of the Settlement Subclass into giving away their legal rights as third-party beneficiaries under the terms of the DOE Settlement by sending checks for payment 'in full and final settlement of all claims.'" Am. Compl. at ¶ 148.  As discussed in greater detail below, Plaintiffs are not third-party beneficiaries under the terms of the DOE Settlement. *See Hawa Abdi Jama v. INS*, 334 F. Supp. 2d 662, 687 (D.N.J. 2004).  Accordingly, to the extent Count One relies on Defendant fraudulently inducing Plaintiffs to waive these rights, it is dismissed with prejudice.

### B. Count Two – Violation of the New Jersey Truth in Consumer Contract, Warranty and Notice Act

As Count Two of the Amended Complaint, Plaintiffs allege that Defendant violated the New Jersey Truth in Consumer Contract, Warranty and Notice Act ("TCCWN"). *See* Am. Compl. at ¶ 153.  Specifically, Plaintiffs allege that Defendant entered into a contract "represented by the checks Defendant issued . . . , together with their accompanying letters, which violated clearly established legal rights of the Plaintiffs and Class." Am. Compl. at ¶ 152. The TCCWN prohibits, in relevant part, any seller from offering or entering into any "written consumer contract" that "violates any clearly established legal right of a consumer." N.J. STAT. ANN. 56:12-15.

The Amended Complaint does not identify which "clearly established right" was allegedly violated by Defendant's Offer Letter or accompanying checks. *See* Am. Compl. at ¶¶ 150-54.  In Plaintiffs' Motion in Opposition, Plaintiff provides some clarification and argues that the "purported 'full satisfaction' or release set forth in [D]efendant's offer directly violates" the

---

guise of factual allegations. *See In re Nice Sys. Sec. Litig.*, 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

11

TCCWN.[4]  Pls. Br. at 19.  However, Plaintiffs' argument "attempts to equate a contract provision

that violates a consumer's legal rights with a consumer's ability to voluntarily waive certain

rights."  *See Salvadori v. Option One Mortgage Corp.*, 420 F. Supp. 2d 349, 355 (D.N.J. 2006).

Plaintiffs' are permitted to "waive their rights to bring suit in a particular jurisdiction," "waive

their rights to bring suit under a particular set of laws," and "waive some notice and procedural

rights in various situations."  *See id.*  Similarly, plaintiffs are permitted to settle disagreements

without pursuing litigation.  *See Brundage v. Estate of Carambio*, 951 A.2d 947, 961 (N.J. 2008)

(stating that the "settlement of litigation ranks high in our public policy") (quotations omitted).[5]

Accordingly, Count Two of the Amended Complaint is dismissed without prejudice.[6]

### C.      Count Three – Breach of Contract – The Implied Covenant of Good Faith and Fair Dealing

As Count Three of the Amended Complaint, Plaintiffs allege that Defendant breached

inherent and express "Terms and Conditions" and warranties in connection with the sale of

Affected Model refrigerators, breached the DOE Settlement Agreement, and breached the

contract created "between Defendant and Plaintiffs . . . when Defendant sent checks,

purported[ly] pursuant to the DOE Agreement, . . . in exchange for a release of Defendant."  Am.

Compl. at ¶¶ 160-61, 170-71.  For the reasons that follow, each of these claims is dismissed.

### 1.      Breach of "Terms and Conditions" and "Warranty" in sales agreement

---

[4] Plaintiffs further argue that a "finding of liability alone under the CFA . . . is sufficient to state a claim under the TCCWN."  Pls. Br. at 19.  Because the Court dismissed Count One of Plaintiffs' claim in its entirety, it need not address the validity of this argument.

[5] Plaintiffs' reliance on *McCarthy v. NASCAR, Inc.*, 87 N.J. Super. 442, 450 (1965) is misplaced. *See* Pls. Br. at 20.  *McCarthy* involved a "release" from liability, not a settlement or release of past claims.  *See McCarthy*, 87 N.J. Super. at 450.  Moreover, *McCarthy* did not hold that release from future liability was illegal, merely that they are to be "strictly construed against the party relying on them."  *See id.*

[6] In light of this holding, the Court need not address Defendant's argument that "the 'contract' that Plaintiffs allege 'violated' their 'legal rights' was not a 'consumer contract' which would properly give rise to a claim under the TCCWN."  *See* Def. Br. at 28.

First, Plaintiffs allege that "Defendant and Plaintiffs entered into a contract through Defendant's "Terms and Conditions" and "Warranty." Am. Compl. at ¶ 158.  Plaintiffs further allege that Defendant breached the terms of that contract by providing Plaintiffs with an improperly labeled "Energy Star" refrigerator, thereby depriving Plaintiffs of the energy efficient refrigerator bargained for.  Am. Compl. at ¶¶ 165-68, 170.  Like Count One above, this claim relates to the "sale, labeling or energy efficiency" of Plaintiffs' Affected Model refrigerator. *See* Offer Letter at 1.  Accordingly, it is also barred under the doctrine of accord and satisfaction. *See Gunter*, 32 F. Supp. 2d at 183.  Therefore, to the extent Count Three relies on Defendant's alleged breach of Defendant's sales agreement, this Count is dismissed without prejudice.

### 2.      Breach of the DOE Settlement Agreement

Next, Plaintiffs allege that Defendant breached the terms of the DOE Settlement Agreement. *See* Am. Compl. at ¶ 160.  Plaintiffs argue that they "were intended third-party beneficiaries of the DOE Settlement because both the DOE and Defendant sought to benefit Plaintiffs." Am. Compl. at ¶ 160.  However, "[s]omething more than mere intent to benefit some third party must be shown for the third party to have actionable rights under the contract." *Hawa Abdi Jama*, 334 F. Supp. 2d at 687.  "There must be language evincing an intent that the party contracting with the government will be held liable to third parties in the event of nonperformance." *Id.*  Here, there is no such language. *See* DOE Settlement Agreement at 1-6. Plaintiffs' acknowledge that the DOE Settlement Agreement does not expressly "provide for enforceable rights for Plaintiffs." Pls. Br. at 23.  Moreover, the explicit terms of the agreement provide that "DOE will maintain exclusive jurisdiction over [the DOE] Agreement until LG has performed all its obligations under the Agreement." DOE Settlement Agreement at 4. Therefore, Plaintiffs do not have standing to enforce the DOE Settlement Agreement. *See Hawa*

13

*Abdi Jama*, 334 F. Supp. 2d at 687.  Accordingly, to the extent Count Three relies on Defendant's alleged breach of the DOE Settlement Agreement, Count Three is dismissed with prejudice.

### 3.   Breach of Defendant's Offer Letter

Finally, Plaintiffs allege that "contracts were created between Defendant and Plaintiffs and members of the Settlement Subclass when Defendant sent checks" to Plaintiffs and Plaintiffs cashed those checks.  Am. Compl. at ¶ 161.  Plaintiffs argue that Defendant subsequently breached those contracts by failing to "modify the Affected Models purchased by Plaintiffs . . . and by failing to compensate them for future excess energy usage and/or consumption by the purchased Affected Models."  Am. Compl. at ¶ 171.  Defendant argues that these "allegations fail to state a claim because they are conclusory" and "devoid of any facts" in support of their allegations.  Def. Br. at 19.  The Court agrees.

Plaintiffs are required to provide "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Plaintiffs fail to meet this burden for both of the alleged breaches.  First, Plaintiffs allege that Defendant breached the contract by failing to "modify the Affected Models."  Am. Compl. at ¶ 171.  The Offer Letter provides Plaintiffs explicit instructions on how to schedule a modification.  *See* Offer Letter at 2.  Plaintiffs have the following three options:

1.   "By Telephone: Call our hotline at 1-888-848-1266.  Have this letter in front of you when you call and quote the reference number at the top of the page."

2.   "Online: Visit www.LGrefrigeratoroffer.com to update your contact details and/or an indication of when you would like to be contacted.  An LG representative will then call you."

3.   "By mail: Please send your name, address, phone number, reference number listed at the top of this document, and any additional information to:  LG Refrigerator Offer."

14

Offer Letter at 2. Plaintiffs do not allege that they pursued any of these methods of "scheduling a modification." *See* Am. Compl. at ¶¶ 156-72. Plaintiffs also do not allege any facts indicating that any such efforts to schedule a modification would be futile. *See* Am. Compl. at ¶¶ 156-72. Accordingly, Plaintiffs have not "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Second, Plaintiffs allege that Defendant breached the contract by failing to "compensate them for future excess usage and/or consumption by the purchased Affected Models." Am. Compl. at ¶ 171. The Offer Letter states that Plaintiffs are entitled to annual payments that will "cover the yearly energy cost difference between the measured energy usage of the refrigerator with the energy-saving modification mentioned above and the energy usage listed on the original Energy Guide label[.]" Offer Letter at 1. Plaintiffs acknowledge receiving three checks to date. Am. Compl. at ¶ 97. Plaintiffs do not allege that these checks failed to comply with the explicit terms of the Offer Letter[7] or that Defendant missed any required annual payment. *See* Am. Compl. at ¶¶ 156-72. Plaintiffs have not alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Accordingly, to the extent Count Three relies on Defendant's alleged breach of the Offer Letter, Count Three is dismissed without prejudice.

### D.    Count Four – Unjust Enrichment

As Count Four of the Amended Complaint, Plaintiffs allege that Defendant was unjustly enriched by selling "Affected Models with deceptive and misleading Energy Star logos and

---

[7] In Plaintiffs' Brief in Opposition, Plaintiffs argues that their refrigerator should have had an annual "kilowatt usage of about 579 KWH" but instead had a rating of approximately "1110 KWH per year." Pls. Br. at 22. Plaintiffs suggest that Defendant failed to provide annual compensation for these extra 531 KWH hours; however, the Plaintiffs were only entitled, under the explicit terms of the Offer Letter, to compensation for the difference between the energy usage of the "refrigerator *with the energy-saving modification* mentioned above and the energy usage listed on the original Energy Guide label." *See* Offer Letter (emphasis added).

Energy Guide Labels," retaining the monies "Defendant should have paid Plaintiffs . . . pursuant to the DOE Settlement," and by virtue of misrepresentations made to Plaintiffs "when Defendant sent them checks purported to reimburse them for the excessive energy usage" by the Affected Models." Am. Compl. at ¶¶ 177, 180.  For the reasons that follow, each of these claims is dismissed.

### 1.    Deceptive labeling of Affected Model refrigerators

Plaintiffs first argue that Defendant "has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of the Affected Models, which retaining under these circumstances is unjust and inequitable because Defendant misrepresented that the Affected Models complied with ENERGY STAR® standards." Am. Compl. at ¶ 179.  As discussed above, Plaintiffs are barred under the doctrine of accord and satisfaction from asserting claims related to the "sale, labeling or energy efficiency" of the Affected Model refrigerators. *See Gunter*, 32 F. Supp. 2d at 183.  Accordingly, to the extent Count Four relies on Defendant's deceptive labeling of Affected Model refrigerators, it is dismissed without prejudice.

### 2.    Retaining DOE Settlement money

Next, Plaintiffs allege that "Defendant has been unjustly enriched in retaining the monies Defendant should have paid Plaintiffs . . . pursuant to the DOE Settlement." Am. Compl. at ¶ 180.  Unjust enrichment is a "quasi-contractual claim." *J.J. Deluca Co. v. United States Hud*, No. 04-4344, 2008 U.S. Dist. LEXIS 20071, *14-15 (D.N.J. March 14, 2008).  Courts in this jurisdiction have explicitly held that the cause of action does "not exist where a valid express contract exists concerning the same subject matter." *See Broad St. Surgical Ctr., LLC v. UnitedHealth Group, Inc.*, No. 11-2775, 2012 U.S. Dist. LEXIS 30466, *22 (D.N.J. March 6, 2012); *see also J.J. Deluca Co.*, 2008 U.S. Dist. LEXIS 20071 at *14-15 (stating that a "plaintiff

cannot pursue a quasi-contractual claim for unjust enrichment if there is an express contract covering the subject matter of the claim."). Here, neither party disputes the existence of an express contract between the DOE and Defendant governing the "subject matter of the claim." Am. Compl. at ¶ 160; Def. Br. at 20-21. Instead, Plaintiffs argue that they should be permitted to pursue an unjust enrichment claim if they do not have standing to enforce the DOE Settlement Agreement. Pls. Br. at 24. Plaintiffs cannot cite to a single case supporting their argument, and it is against the clear weight of the law before this Court. *See* Pls. Br. at 24-26; *see also Broad St. Surgical Ctr., LLC*, 2012 U.S. Dist. LEXIS 30466 at *22; *J.J. Deluca Co.*, 2008 U.S. Dist. LEXIS 20071 at *14-15. Accordingly, to the extent Count Four relies on Defendant's retention of money in connection with the DOE Settlement, it is dismissed with prejudice.

### 3. Unjust enrichment through misrepresentations in connection with Defendant's Offer Letter

Finally, Plaintiffs allege that "Defendant has been unjustly enriched in retaining the monies Defendant should have paid Plaintiffs . . . pursuant to the representation made to Plaintiffs . . . when Defendant sent them checks purported[ly] to reimburse them for the excessive energy usage and/or consumption by the Affected Models." Am. Compl. at ¶ 180. Defendant argues that this Offer Letter constituted an enforceable contract and that Plaintiffs are therefore prohibited from also pursuing a quasi-contract claim.[8] Def. Br. at 23. The Court agrees. "[W]here an express contract governs the relationship of the parties, unjust enrichment is not an available means of recovery." *Baker v. Inter Nat'l Bank*, No. 08-5668, 2012 U.S. Dist. LEXIS 6920, *29 (D.N.J. Jan. 19, 2012). Accordingly, to the extent Count Four relies on misrepresentations made in connection with the Offer Letter, it is dismissed without prejudice.

---

[8] Plaintiffs challenge the validity of the contract and assert "misconduct" on behalf of the Defendant. *See e.g.*, Am. Compl. at ¶¶ 195, 213. However, as discussed in greater detail below, Plaintiffs do not adequately nudge these "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### E.    Count Five – Breach of Implied Warranty of Merchantability

As Count Five of the Amended Complaint, Plaintiffs allege that "Defendant breached the warranty implied in the contract for the sale of Affected Models[.]" Am. Compl. at ¶ 186. Defendant moves to dismiss Count Five, and Plaintiffs agree "not to oppose Defendant's motion." Pls. Br. at 26. Instead, Plaintiffs seek leave to amend their complaint and provide the Court with a Proposed Second Amended Class Action Complaint ("Proposed Complaint"). *See* Pls. Br. at 26. Plaintiffs' Proposed Complaint omits Plaintiffs' breach of implied warranty of merchantability claim and inserts a breach of express warranty claim as the new Count Five. [9] *See* Prop. Compl. at ¶¶ 183-87.

Plaintiff's Proposed Count Five states that Defendant "expressly warranted that the Affected Models were fit for their intended purpose in that they would function properly as energy efficient refrigerators within the parameters established by federal law and the ENERGY STAR® program." *See* Prop. Compl. at ¶ 185. This claim involves the "sale, labeling or energy efficiency" of the Affected Model refrigerators, and, for the reasons discussed above, would also fail under the doctrine of accord and satisfaction. *See Gunter*, 32 F. Supp. 2d at 183. Accordingly, Plaintiffs' Cross-Motion for Leave to File a Second Amended Class Action Complaint is denied at this time as futile, and the Court dismisses Count Five of the Amended Complaint with prejudice. [10]

### F.    Count Six – Intentional Misrepresentation

---

[9] Notably, Plaintiffs' Proposed Complaint does not cure any of the fatal defects in any of Plaintiffs' eight remaining counts, including those counts seeking to invalidate Defendant's Offer Letter and thereby nullify Plaintiff's accord and satisfaction defense. *See generally*, Prop. Compl. at ¶¶ 129-279.

[10] As discussed below, Plaintiffs' Amended Complaint is dismissed in its entirety. If Plaintiffs file a Second Amended Complaint, nothing in this Opinion should be read as precluding Plaintiffs from then asserting a breach of express warranty claim if they so choose.

As Count Six of the Amended Complaint, Plaintiffs allege that Defendant "willfully, falsely, and knowingly misrepresented material facts" relating to the "character and quality of the Affected Models" and the "issuance of checks purported[ly] for past excess energy usage . . . and/or relating to the modification of purchasers' Affected Models." Am. Compl. at ¶¶ 194-95. For the reasons that follow, each of these claims is dismissed.

> ### 1.   Intentional misrepresentation regarding the quality of Affected Models

First, Plaintiffs allege that Defendant "willfully, falsely, and knowingly misrepresented material facts relating to the character and quality of the Affected Models." Am. Compl. at ¶ 194. Specifically, Plaintiffs argue that Defendant made misrepresentations in the "energy usage labels and the ENERGY STAR® label[s]" even though Defendant knew the reported energy usage rates were "only obtained by manipulating and rigging the energy testing procedures." Am. Compl. at ¶ 194. As discussed above, Plaintiffs are barred from asserting claims "relating to the sale, labeling or energy efficiency" of the Affected Model refrigerators under the doctrine of accord and satisfaction. *See Gunter*, 32 F. Supp. 2d at 183. Plaintiffs' allegations fall squarely within these categories and are therefore barred. Accordingly, to the extent Count Six relies on intentional misrepresentation regarding the "quality" of Affected Model refrigerators, it is dismissed without prejudice.

> ### 2. Intentional misrepresentations regarding Defendant's Offer Letter

Next, Plaintiffs allege that Defendant "willfully, falsely, and knowingly misrepresented material facts relating to the issuance of checks purported[ly] for past excess energy usage and/or consumption by the Affected Models, relating to Defendant's promise that they would pay for future excess energy usage . . . and/or relating to the modification of purchasers' Affected Models." Am. Compl. at ¶ 195. Defendant moves to dismiss Count Six alleging that Plaintiffs

failed to plead sufficient facts supporting even a plausible inference Defendant made intentional misrepresentations in connection with the Offer Letter. Def. Br. at 15. The Court agrees.

To establish a claim for common law fraud under New Jersey law, a plaintiff must prove five elements: 1) "a material misrepresentation by defendant of a presently existing fact or past fact;" 2) "knowledge or belief by the defendant of its falsity;" 3) "intent that the plaintiff rely on the statement;" 4) "reasonable reliance by the plaintiff;" and 5) "resulting damages to the plaintiff." *Marino v. Marino*, 200 N.J. 315, 341 (2009) (citing *Liberty Mut. Ins. Co. v. Land*, 186 N.J. 163, 175 (2006)); *see also Whittingham v. Mortgage Elec. Registration Servs.*, No. 06-3016, 2007 U.S. Dist. LEXIS 33476 *13-14 (D.N.J. May 15, 2007) (construing a "claim of 'intentional misrepresentation' as one for fraud" and applying the same elements). Under Federal Rule of Civil Procedure 9(b), plaintiffs are required to plead each of these elements with particularity to "place the defendant on notice of the precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

Here, Plaintiffs do not meet this burden. Plaintiffs do not allege that Defendant promised to provide them with any compensation or services outside the explicit terms of the Offer Letter. *See generally*, Am. Compl. at ¶¶ 192-201. Instead, Plaintiffs allege that Defendant promised to modify the refrigerator and "pay for future excess energy usage." Am. Compl. at ¶ 195. As discussed above, Plaintiffs have not pled sufficient facts demonstrating that Defendant did not comply with the terms of the agreement. Accordingly, Plaintiffs have not adequately pled that Defendant made a "material misrepresentation" or that any such misrepresentation resulted in "damages to the [P]laintiff." *See Marino*, 200 N.J. at 341.

Finally, even if Plaintiffs had sufficiently pled these elements, they do not sufficiently plead "knowledge or belief by [D]efendant of its falsity." *See id.* Plaintiffs pled that Defendant

"willfully, falsely, and knowingly misrepresented material facts." Am. Compl. at ¶ 195.

However, "it is not enough to merely allege that defendants knew or must have known that their

statements were false." *In re Great Atlantic & Pacific Tea Co., Inc. Sec. Litig.*, 103 Fed. App'x.

465, 469 (2004) (citations omitted). Plaintiffs do not plead any additional facts to inject some

measure of substantiation into such conclusory statements. *See generally Iqbal*, 556 U.S. at 678

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). In the absence of any supporting facts, these allegations are simply

legal conclusions and thus do not benefit from the "presumption of truth." *Id.* at 681.

Accordingly, to the extent Count Six relies on intentional misrepresentations made in connection

with the offer letter, it is dismissed without prejudice.

### G.     Count Seven – Fraudulent Concealment/Nondisclosure

As Count Seven of the Amended Complaint, Plaintiffs allege that Defendant committed

fraudulent concealment and/or disclosure. Am. Compl. at ¶¶ 206-18. To plead fraudulent

concealment in New Jersey, a plaintiff must allege: "(1) a material misrepresentation of a

presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an

intention that the other person rely on it; (4) a reasonable reliance thereon by the other person;

and (5) resulting damages." *Arcand v. Bros. Int'l. Corp.*, 673 F. Supp. 2d 282, 305 (D.N.J. 2009)

(citations and quotations omitted). Moreover, a plaintiff must allege a "duty to disclose," which

arises in the following three types of relationships: (1) fiduciary relationship; (2) "relationships

where one party expressly deposits trust in another party;" and (3) "relationships involving

transactions so intrinsically fiduciary that a degree of trust and confidence is required to protect

the parties." *Id.* (citations and quotations omitted).

Here, Plaintiffs allege that Defendant "intentionally concealed and/or failed to disclose a proper estimate of the energy consumption of the Affected Models for the purpose of inducing Plaintiffs and the Class to act thereon." Am. Compl. at ¶ 210. However, as discussed above, claims related to the "sale, labeling or energy efficiency" of Affected Model refrigerators are precluded under the doctrine of accord and satisfaction. *See Gunter*, 32 F. Supp. 2d at 183. Plaintiffs also allege that Defendant "knew that they would not pay Plaintiffs . . . for the future excess energy usage . . . and that they would not modify Plaintiffs' . . . Affected Models at the time that Defendant informed Plaintiffs . . . that the Affected Models' energy usage did not conform to Defendant's prior representation." Am. Compl. at ¶ 213. This claim also fails. As discussed above, Plaintiffs have not alleged with sufficient particularity the existence of a material misrepresentation, "knowledge or belief by the defendant of its falsity," or "resulting damages." *See Frederico*, 507 F.3d at 200. Accordingly, Count Seven is dismissed without prejudice.

### H.   Count Eight – Punitive Damages

As Count Eight of the Amended Complaint, Plaintiffs seek punitive damages and allege that Defendant "sold and marketed the Affected Models in the fraudulent and/or misleading manner alleged herein and fraudulent[ly] induced Plaintiffs . . . to accept the checks, payments and settlement set forth in Defendant's letter and checks." Am. Compl. at ¶ 223. Plaintiffs' first claim for punitive damages relates to the sale and marketing of Affected Model refrigerators. *See* Am. Compl. at ¶ 223. As discussed above, this claim is therefore barred under the doctrine of accord and satisfaction. *See Gunter*, 32 F. Supp. 2d at 183.

Defendant move to dismiss Plaintiffs' second claim arguing that "New Jersey does not recognize 'punitive damages' as an independent cause of action." Def. Br. at 29. The Court

agrees.  Under New Jersey law, "punitive damages are not available as a separate cause of action, and may only be awarded if compensatory damages are available." *Blackhall v. Access Group*, No. 10-00508, 2010 U.S. Dist. LEXIS 99596, *20 (D.N.J. Sept. 22, 2010).  Here, for the reasons discussed above and below, the Court dismisses each of Plaintiffs' claims for compensatory damages.  Accordingly, Count Eight is dismissed without prejudice. *See Blackhall*, 2010 U.S. Dist. LEXIS 99596 at *20.

      **I.**      **Count Nine – Violation of the Consumer Fraud Laws of the Various States**

As Count Nine of the Amended Complaint, Plaintiffs allege that Defendant violated the consumer fraud laws of forty-nine states and the District of Columbia. *See* Am. Compl. at ¶¶ 230-79.  Specifically, Plaintiffs allege that "Defendant violated each of these statutes by representing the Affected Models as ENERGY STAR®-qualified and by misrepresenting the energy consumption of the Affected Models." Am. Compl. at ¶ 280.  As discussed above, pursuant to the doctrine of accord and satisfaction, Plaintiffs are barred from asserting claims "relating to the sale, labeling or energy efficiency" of Affected Model refrigerators. *See Gunter*, 32 F. Supp. 2d at 183.  Accordingly, Count Nine of the Amended Complaint is dismissed without prejudice.

**IV.**      **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiffs' Amended Class Action Complaint is granted in its entirety and Plaintiffs' Cross Motion for Leave to File Second Amended Class Action Complaint is denied.  An appropriate Order accompanies this Opinion.

DATED: February 7, 2013

                                         Jose L. Linares
                                         United States District Judge