# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA PERROTTA, and MICHAEL PERROTTA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LG ELECTRONICS USA, INC., a Delaware Corporation, and JOHN DOES 1-10 (presently known [sic] individuals, partnerships, companies, and/or other entities),<br><br>Defendant. | Civil Action No. 12-246 (JLL) (MAH)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant LG Electronics USA, Inc. ("Defendant" or "LG")'s Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(6) (CM/ECF No. 48). The Court has considered the submissions made in support of and in opposition to the instant motion and decides the matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, the Court **GRANTS** Defendant's Motion and dismisses the SAC with prejudice.

## I.    BACKGROUND[1]

The Court will not recount the facts except as necessary to the instant discussion as it has already done so. This putative class action arises out of Defendant's manufacture, design, marketing, advertisement, and sale of ten French-door refrigerator models (collectively the

---

[1] For purposes of the current motion, the Court accepts the facts set forth in Plaintiffs' Second Amended Complaint as true.

"Affected Models").² (SAC ¶ 2). Plaintiffs Lisa and Michael Perrotta ("Plaintiffs" or the "Perrottas") purchased an Affected Model refrigerator, the LFX25960TT, on December 8, 2006, and received delivery of the refrigerator on December 11, 2006. (*Id.* at ¶ 95). The Perrottas allege that their refrigerator, and each of the Affected Models, contained inaccurate Energy Guide and "Energy Star" labels. (*Id.* at ¶ 2).

Department of Energy (the "DOE") and Environmental Protection Agency (the "EPA") guidelines require manufacturers, like LG, to affix Energy Guide labels to the exterior of refrigerators. (*Id.* at ¶ 29). Energy Guide labels provide consumers with estimates of the annual energy consumption and cost of operating an appliance. (*Id.*). These estimates are based on the results of testing conducted pursuant to federal guidelines promulgated by the DOE and EPA. (*Id.*). Federal regulations also set minimum energy efficiency standards. (*Id.* at ¶¶ 27-28). Refrigerators that are at least twenty percent more energy efficient than these minimum standards qualify for the Energy Star label. (*Id.* at ¶ 27). Refrigerators bearing the Energy Star label are typically more expensive than standard models. (*Id.* at ¶ 4). However, these refrigerators come with the promise of reduced energy bills that, over time, will generate enough savings to recoup the higher price. (*Id.*).

Plaintiffs allege that the Affected Model refrigerators' inaccurate Energy Guide and Energy Star labels resulted from the rigging and falsification of energy efficiency tests. (*Id.* at ¶ 3). Specifically, Plaintiffs allege that Defendant deliberately disabled two heaters in the Affected Model refrigerators during testing that would have otherwise consumed significant amounts of energy. (*Id.* at ¶¶ 33-34). As a result, Plaintiffs submit that Defendant deliberately

---

² The specific LG refrigerator models are numbers LFX25950, LFX25960, LFX25971, LFX23961, LFX21960ST, LFX21971ST, LFX21980ST, LFX25980ST, LMX21981ST, and LMX25981ST.

underreported the Affected Models' energy usage and falsely qualified for an Energy Star rating for the Affected Models. (*Id.* at ¶ 34).

The DOE investigated LG's conduct with regard to the Energy Star ratings in connection with the Affected Models. (SAC ¶ 9). On November 14, 2008, the DOE entered into a settlement agreement (the "Settlement Agreement") with Defendant. (*Id.* ¶¶ 9, 57-61, Ex. A). Pursuant to the Settlement Agreement, Defendant agreed, in relevant part, to:

1. "[V]alidate through third-party testing, in conjunction with DOE, product modifications that shall yield improved energy efficiency in the Affected Models;"
2. "[P]romptly offer retailers and consumers who have purchased Affected Models the opportunity to have Affected Models modified, at no cost to them;" and
3. "[O]ffer consumers an annual credit that shall reflect the future energy consumption difference occurring during the average useful life (which is defined as fourteen (14) years from the date of purchase by the consumer) of such affected models . . . in the form of a check from LG to each purchaser of an Affected Model, with the first checks expected to be issued by December 19, 2009, and subsequent checks to be issued annually to consumers on the anniversary date of the issuance of the first check to cover the remaining years of useful life of the Affected Model, in full satisfaction of these credits."

(SAC ¶ 9, Ex. A at 3-4).

Subsequently, Defendant sent a letter to customers of the Affected Model refrigerators (the "Offer Letter"). (SAC ¶ 73; Declaration of Timothy McGrady, Ex. A ("McGrady Decl.")).[3] The Offer Letter providing the following notification:

> Based on guidance from the [DOE] about the interpretation of the testing rules for refrigerators, [Defendant] has changed the energy rating on the model of the LG refrigerator you purchased. The rating for this product now reflects higher energy usage than was indicated by the information on the labels and other materials at the time you made the purchase.

(McGrady Decl. Ex. A at 1). The Offer Letter further informed customers that Defendant would provide the following three-part offer:

---

[3] As previously explained, the Court may properly consider the Offer Letter and accompanying checks, as they are both integral to and explicitly relied on in the SAC. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quotation marks omitted).

1. A one-time cash payment to cover the energy cost difference, "calculated from the date of purchase until November 14, 2008, between the energy usage of your refrigerator measured pursuant to DOE's new guidance for the product and the amount listed on the original Energy Guide Label;"
2. Modification of the customer's refrigerator "at your convenience" and free of charge to "lower the energy consumption over the life of the product;" and
3. "[O]ne cash payment each year over the expected useful life of the product . . . [to] cover the yearly energy cost difference between the measured energy usage of the refrigerator with the energy-saving modification mentioned above and the energy usage listed on the original Energy Guide label at the time your purchased the refrigerator."

(*Id.*). The Offer Letter also noted that "the enclosed check is offered in full satisfaction of any disputed or unliquidated claims as between LG and the payee." (*Id.*). Moreover, the Offer Letter clarified that "[b]y endorsing and cashing the enclosed check, payee forever releases LG . . . from any claims, whether or not presently known, relating to the sale, labeling or energy efficiency of the LG refrigerator-freezer to which this payment relates." (*Id.*).

In early 2009, Plaintiffs received their Offer Letter and "one-time cash payment" totaling $66.37 from Defendant. (SAC ¶¶ 73, 109; McGrady Decl. Ex. A). Plaintiffs accepted and deposited the check. (SAC ¶ 113). In July 2009, September 2010, and October 2011, Plaintiffs received checks from Defendant for the purported future excess energy usage by their Affected Model refrigerator. (*Id.* at ¶ 115). Each check indicated that it was to be "ACCEPTED AS FULL AND FINAL SETTLEMENT OF ALL CLAIMS." (*Id.* at ¶ 81) (emphasis in original).

The Perrottas allege that they never received a modification to their refrigerator or compensation for the excess energy usage without modification. (*Id.* at ¶ 114). Therefore, they allege that they continue to incur excess energy costs, increasing their damages. (*Id.* at ¶¶ 116-118). However, they do not allege that they attempted to schedule a modification through any of the methods set forth in the Offer Letter. (*Id.* at ¶¶ 95-118).

Plaintiffs filed suit on January 12, 2012. (CM/ECF No. 1). Plaintiffs filed an Amended Complaint ("FAC") on July 20, 2012. (CM/ECF No. 19). On February 7, 2013, this Court

dismissed the FAC in its entirety. (CM/ECF Nos. 43-44). On March 8, 2013, Plaintiffs filed the SAC, which asserts the following causes of action: (1) violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 58:8-1 *et seq*. (the "NJCFA"); (2) violation of the New Jersey Truth in Consumer Contract, Warranty and Notice Act, N.J. Stat. Ann. §§ 56:12-15 *et seq.* (the "TCCWNA"); (3) breach of contract; (4) unjust enrichment; (5) breach of express warranty; (6) intentional misrepresentation; and (7) violations of states' deceptive practices act. (CM/ECF NO. 45).

Defendant moved to dismiss the SAC on April 5, 2013. (CM/ECF No. 48). Plaintiffs opposed the motion on May 28, 2013.[4] (CM/ECF No. 53). LG filed a Reply on June 21, 2013. (CM/ECF No. 54).

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Determining whether a complaint is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). The reviewing court must "construe the complaint in the light most favorable to the plaintiff." *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir. 2010)

---

[4] The Court notes that Plaintiffs' Opposition fails to comply with the Local Rules as it contains neither a table of contents nor a table of authorities. L.Civ.R. 7.2(b). The Court will consider the submission in this instance, but admonishes Plaintiffs to comply with the applicable Local Rules in any further submissions to the Court.

(citation omitted). However, "'labels and conclusions' [and] 'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (citations omitted). Ultimately, if the factual allegations fail "to raise a right to relief above the speculative level," the reviewing court must dismiss the claim. *Twombly*, 550 U.S. at 555.

## III. DISCUSSION

This Court's jurisdiction is premised on 28 U.S.C. § 1332(d)(2) and 28 U.S.C. § 1367. Defendants move to dismiss the SAC in its entirety due to the following: (1) Plaintiffs' claims arising from the sale, labeling, or energy consumption of their refrigerator remain barred by the doctrine of accord and satisfaction; (2) Plaintiffs' New Jersey Consumer Fraud Act ("NJCFA") claim remains subject to dismissal for failure to plead the essential elements of unlawful practice and ascertainable loss; (3) Plaintiffs New Jersey Truth in Consumer Contract, Warranty and Notice Act ("TCCWA") claim does not state a claim once again; (4) the express warranty claim remains defective for several independent reasons; (5) Plaintiffs "identical" breach of contract claim fails; (6) the amended unjust enrichment claim continues to be duplicative of the defective contract claim; and (7) Plaintiffs' intentional misrepresentation claim remains conclusory and does not adequately state a claim. Accordingly, LG argues that no further leave to amend should be granted.

Defendant argues that with the exception of Plaintiffs' TCCWNA claim, the doctrine of accord and satisfaction bars all of Plaintiffs' claims relating to marketing, advertising, and sale of the Affected Models. (Def.'s Mot. 10). The Perrottas concede that this is the case. (Pls.' Opp'n. 7 n. 3) ("Defendant's claim of accord and satisfaction does not apply to Plaintiff's claim under TCCWNA"). Accordingly, the Court begins its analysis there.

### A. The Doctrine of Accord and Satisfaction

6

At the outset, the Court notes that it previously found Plaintiffs' claims based on the "marketing, advertising, and sale of Affected Models" to be barred by the doctrine of accord and satisfaction. (CM/ECF No. 43, 6-9, 13, 16, 18-19).

As explained in the Court's previous Opinion in this matter,

> The three essential elements of an accord and satisfaction defense are as follows: "(1) [a] bona fide dispute as to the amount owed; (2) a clear manifestation of intent by the debtor to the creditor that payment is in satisfaction of the disputed amount; and (3) an acceptance of satisfaction by the creditor." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 166, 183 (D.N.J. 1998). Here, each of these elements is satisfied. First, there is a bona fide dispute as to the amount owed. *See id.* Defendant notified Plaintiffs that Defendant had "changed the energy rating on the model of LG refrigerator" Plaintiffs had purchased. Offer Letter at 1. Plaintiffs and Defendant had never entered into an agreement providing liquidated damages in the event the energy rating changed. Moreover, for the reasons discussed elsewhere in this opinion, Plaintiffs do not have a right to enforce the DOE Settlement Agreement. Accordingly, there was a bona fide dispute as to the amount of damages owed to Plaintiffs, if any, and Defendant proposed a settlement.
>
> Second, there is a "clear manifestation of intent by the debtor to the creditor that payment is in satisfaction of the disputed amount." *See Gunter*, 32 F. Supp. 2d at 183. In the Offer Letter, Plaintiffs indicate that the "check is offered in full satisfaction" of any damages and by endorsing the check "payee forever releases" Defendant from any claims. *See* Offer Letter at 1. Moreover, each of the checks sent to Plaintiffs contain the explicit language "accepted as full and final settlement of all claims." *See* Am. Compl. at ¶ 79. Defendant's intent was clear—to settle any claims related to the "sale, labeling or energy efficiency" of the Affected Model refrigerators. *See* Offer Letter at 1.
>
> Plaintiffs argue that the language on each of the checks was misleading as each denoted that it was to be "accepted as full and final settlement of all claims." *See* Am. Compl. at ¶ 79. Plaintiffs claim that four different checks cannot each be offered as a "full and final settlement. *See* Pls. Br. at 8-9. However, the "check and [Offer Letter] can, and indeed must, be read together." *See A.G. King Tree Surgeons v. Deeb*, 356 A.2d 87, 89 (N.J. Super. 1976). The Offer Letter indicates that the enclosed check is payment in full for "past energy usage" and that there would be "one cash payment each year over the expected useful life of the product" that will cover in full the energy usage of the refrigerator for that year. Offer Letter at 1. From this language, it is clear that Defendant intended to provide multiple checks and each was intended as payment in full for a certain obligation set forth in the settlement offer. *See* Offer Letter at 1.

> Finally, the Court finds that there was "acceptance of satisfaction by" Plaintiffs. *See A.G. King Tree Surgeons*, 356 A.2d at 89. Plaintiffs do not contest that they received, endorsed, and cashed each of the four checks they have received to date. *See* Am. Compl. at ¶¶ 94-95, 97; *see also* Def. Br. at 12. Under New Jersey law, "when a check is tendered as payment for an unliquidated claim on the condition that it be accepted in full payment, the creditor is deemed to have accepted this condition by depositing the check for collection[.]" *Chancellor, Inc. v. Hamilton Appliance Co.*, 418 A.2d 1326, 1327 (N.J. Super. 1980). If the "*check was unacceptable as final settlement, [Plaintiffs'] remedy was to return the check to [D]efendant and sue for the full amount claimed due.*" *Id.* (emphasis in the original). Accordingly, to the extent Count One relies on the marketing, advertising, and sale of Affected Model refrigerators, it is dismissed without prejudice. *See Gunter*, 32 F. Supp. 2d at 183.

(CM/ECF No. 43, 7-9). The Court found that the doctrine of accord and satisfaction barred a number of claims, including the following: (1) violation of the NJCFA arising from LG's deceptive advertising and marking campaign; (2) breach of the "terms and conditions" and "warranty" in the sales agreement; (3) unjust enrichment from the deceptive labeling of Affected Models; (4) breach of implied warranty of merchantability; and (5) intentional misrepresentation regarding the quality of Affected Models.

LG argues that "[t]here are no new facts alleged in the [SAC] to change the Court's conclusion that the doctrine of accord and satisfaction bars all of Plaintiffs' claims to the extent that they 'rely on the marketing, advertising, and sale of Affected Model refrigerators.'" (Def.'s Mot. 8). Further, Defendant argues that despite Plaintiffs' new allegations regarding the "approximate" amount of "additional electric costs" to which they were entitled, it remains the case that "[t]he settlement of a disputed or unliquidated debt for a payment in an amount *less* than the creditor might have claimed if she had instead chosen the expense and uncertainty of

litigation has long been the very essence of the doctrine of accord and satisfaction." [5] (Def.'s Mot. 9) (citing *Decker v. George W. Smith & Co.*, 96 A. 915, 916 (N.J. 1916); *A.G. King Tree Surgeons v. Deeb*, 356 A.2d 87, 90 (N.J. Bergen Co. Dist. Ct. 1976); *In re Steel Wheels Transp., LLC*, 2009 Bankr. LEXIS 998, at *19 (Bankr. D.N.J. Jan. 23, 2009)). Finally, Defendant argues that holding otherwise would undermine the doctrine and New Jersey's strong policy of enforcing settlements. (Def.'s Mot. 10). Therefore, LG urges that "the Court's dismissal of Plaintiffs' claims as barred by the doctrine of accord and satisfaction was entirely proper notwithstanding allegations that LG's 'letters and checks . . . offered less money than the amounts to which Plaintiffs . . . were entitled.'" (Def.'s Mot. 9) (quoting Declaration of Phoebe Wilkinson Ex. J ¶¶ 13, 72, 76, 99) ("Wilkinson Decl."). [6]

In Opposition, the Perrottas make the following arguments. First, they argue that the first element of accord and satisfaction is not met because there was no "bona fide dispute," as they had no knowledge that "a larger amount is or may be owing from LG." (Pls.' Opp'n 7) (quoting SAC ¶ 112). Next, the Perrottas argue that even if accord and satisfaction bars past claims of excess energy use, there exists no accord and satisfaction for claims arising from future years, as the expected life of the refrigerator is fourteen years. (Pls.' Opp'n. 9). In addition, Plaintiffs argue that the Offer Letter and checks "are misrepresentations because they indicate that the

---

[5] The Court takes this opportunity to note that Plaintiffs once again assert a breach of contract claim in connection with the Offer Letter. (Pls.' Opp'n. 23-24). Defendant characterizes that claim as "identical" and not containing "a single new allegation." (Def.'s Mot. 24-25). In Opposition, Plaintiffs only point to their allegation that the first check, sent in 2009, was less than half of the amount of energy used by them from the date of purchase until the date of the Offer Letter. (Pls.' Opp'n. 24). The Court agrees with Defendant that these allegations do not plausibly allege that Defendants breached the Offer Letter, or change the fact that Plaintiffs accepted the terms set forth in the Offer Letter and cashed that check.

[6] The Court notes for the sake of completeness that Exhibit J to the Wilkinson Declaration is Plaintiffs' Amended Class Action Complaint. (CM/ECF No. 19).

cashing of the first check is in 'full satisfaction' of any claims while indicating simultaneously that additional payments over the years will be made – each and every one of those checks also purportedly constituting a 'full satisfaction' of any claims, thereby contradicting the initial premise that the first check (or any one subsequently sent check constitute 'full satisfaction' of any disputed claim." (Pls.' Opp'n. 10). Finally, they argue that LG's offer was linked to its purported offer to modify the Affected Models and, accordingly, the checks could not constitute "full satisfaction." (Pls.' Opp'n. 10).[7]

Despite the fact that Plaintiffs did not file a motion for reconsideration following the Court's previous Opinion, they rehash their previous arguments or slight variations thereof. Accordingly, the Court will not revisit its decision. Indeed, the law of the case doctrine prohibits this Court from doing so here. "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988); *Speeney v. Rutgers, The State University*, 369 F. App'x. 357, 359 (3d Cir. 2010). Generally, a Court may reconsider its previous ruling only under unusual circumstances. *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982). Those limited instances include the following: (1) the right to move for reconsideration would be effectively

---

[7] Plaintiffs also argue that dismissing their claims pursuant to the doctrine of accord and satisfaction is premature: "to find that accord and satisfaction applies on a motion to dismiss, before any discovery has been exchanged (especially considering that much of Defendant's arguments are based upon the additional documents annexed to the Declarations of Timothy McGrady and Phoebe A. Wilkinson that are not referenced in the Complaint) is premature." (Pls.' Opp'n. 8). "However, an exception to the general rule [that a court may not consider matters extraneous to the pleadings] is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (citations omitted). Plaintiffs do not argue that consideration of any of the documents submitted in conjunction with the Declarations is inappropriate. In any event, to the extent that the Court did rely on same, it explained its reasons for doing so.

denied; (2) new evidence is available; (3) there has been an intervening change in the controlling law; or (4) there is a need to correct a clear error or prevent manifest injustice. *Bridge v. U.S. Parole Com'n*, 981 F.2d 97, 103 (3d Cir. 1992); *see NL Indus., Inc. v. Commercial Union Ins. Co.*, 65 F.3d 314, 324 n.8 (3d. Cir. 1995); *see also Venneman v. BMW Financial Servs. NA, LLC*, Civ. No. 09-5672, 2013 WL 3188878, at *3 n.3 (Jun 21, 2013). The Court concludes that none of those unusual circumstances exist here. Indeed, Plaintiffs do not argue otherwise.

There remains no dispute that Plaintiffs accepted the initial check despite LG's clear statement that same would forever release LG from any claims. As discussed above, the Offer Letter provided: "[b]y endorsing and cashing the enclosed check, payee forever releases LG . . . from any claims, whether or not presently known, relating to the sale, labeling or energy efficiency of the LG refrigerator-freezer to which this payment relates." (McGrady Decl. Ex. A). In any event, the Court previously determined that LG "intended to provide multiple checks and each was intended as payment in full for a certain obligation set forth in the settlement offer." (CM/ECF No. 43, 9). Accordingly, to the extent that Plaintiffs did not believe the Offer Letter to be adequate, they were under no obligation to accept its terms. Having done so, the doctrine of accord and satisfaction continues to bar their claims arising from the marketing, advertising, and sale of Affected Model refrigerators.[8] *See Gunter*, 32 F. Supp. 2d at 183.

---

[8] As discussed above, the Court previously dismissed without prejudice Plaintiffs' claim for intentional misrepresentations made in connection with the Offer Letter as well as the quality of the Affected Models. (CM/ECF No. 43, 18-21). Plaintiffs now allege that through its testing, Defendant "knew" that the Affected Models did not comply with Energy Star requirements. (SAC ¶ 219). The addition of this lone allegation fails to alter the Court's conclusion that Plaintiffs fail "to inject some measure of substantiation into [their] conclusory statements" regarding LG's knowledge that any of their representations were false. (CM/ECF No. 43, 20-21). The parties do not dispute that a conclusion by the Court that acceptance of the Offer Letter by Plaintiffs constituted an accord and satisfaction is dispositive of the remainder of the Perrotta's intentional misrepresentation claim in that regard.

Finally, Plaintiffs argue that the modifications were inextricably linked to the checks and, therefore, the checks did not constitute "full satisfaction." (Pls.' Opp'n. 10). However, Plaintiffs cite no case in support of that proposition. In any event, as previously explained by the Court, "the 'check and [Offer Letter] can, and indeed must, be read together.'" (CM/ECF No. 43, 8) (quoting *A.G. King Tree Surgeons v. Deeb*, 356 A.2d 87, 89 (N.J. Super. 1976)). It is unclear from Plaintiffs' submission why same would not apply to the modifications. Accordingly, the Court once again finds that the acceptance of the Offer Letter through the cashing of the initial check – and subsequent checks for that matter – constituted an accord and satisfaction. Therefore, the Court dismisses with prejudice all claims premised upon the marketing, advertising, and sale of Affected Models. As discussed above, the parties do not dispute that the only claim which is unaffected by such a conclusion is for violation of the NJCCWNA.

B.      **Violation of the New Jersey Consumer Contract, Warranty and Notice Act**

The TCCWNA prohibits any seller from offering or entering into any "written consumer contract" that "violates any clearly established legal right of a consumer." N.J. Stat. Ann. § 56:12-15. Plaintiffs allege that Defendant entered into a consumer contract "represented by the checks Defendant issued . . ., together with [the Offer Letter], which violated clearly established legal rights of the Plaintiffs." (SAC ¶ 175). That violation of Plaintiffs' legal rights, Plaintiffs argue, stems from the full release of all claims that Plaintiffs may have had against Defendant contained in Defendant's Offer Letter and checks.[9] (*Id.* at ¶¶ 176-77).

---

[9] Plaintiffs further argue that a violation of the NJCFA standing alone constitutes a violation of the TCCWNA. (CM/ECF No. 53 at 20). The Court notes that it addressed that argument in its previous Opinion. (CM/ECF No. 43, 12 n.4). In any event, as discussed below, the Court concludes that the Perrottas fail to state a claim under the NJCFA. Therefore, the Court will not address those arguments once more.

12

LG argues that "Plaintiffs amended their TCCWNA claim *only* to allege the very same assertions *again*. It is beyond cavil that the mere pleading of such assertions cannot create a 'legal right' let alone one 'clearly established . . . by State or Federal Law." (Def.'s Mot. 20) (emphasis in original) (quoting N.J. State Ann. § 56:12-15 and citing *McGarvey v. Penske Auto. Grp.*, 2011 U.S. Dist. LEXIS 35408, at *13 (D.N.J. Mar. 31, 2011) *aff'd*, 2012 U.S. App. LEXIS 13450 (3d Cir. July 2, 2012)).

Plaintiffs argue that "Defendant's offer and purported 'full satisfaction' attempts to waives [sic] the rights of Plaintiff and putative class members explicitly protected by the TCCWNA." (Pls.' Opp'n. 22). However, the operative complaint fails to identify which clearly established right Defendant's offer letter or checks allegedly violated. Rather, the Perrotta's argument continues to "attempt[] to equate a contract provision that violates a consumer's legal rights with a consumer's ability to voluntarily waive certain rights." *Salvadori v. Option One Mortg. Corp.*, 420 F. Supp. 2d 349, 355 (D.N.J. Mar. 16, 2006). Such an argument is inapposite because the "[t]he plain language of the [TCCWNA] establishes that the focus of the Act is to preclude violations of clearly established rights, not the voluntary waiver of rights." *Id.*[10] Plaintiffs attempt to distinguish *Salvadori*, arguing that the TCCWNA may not be waived and that and that voluntary waivers of certain rights must be knowing. (Pls.' Opp'n. 22). In this regard, Plaintiffs construe Defendant's argument as urging that the TCCWNA may be waived. However, the substance of their argument is that a voluntary settlement which purports to release all claims is separate from a contract which attempts to prospectively limit a party's rights. (Def.'s Reply 7). Moreover, if this Court were to accept Plaintiffs' position, any accord and

---

[10] Indeed, in support of their argument, Plaintiffs point to *Curtis v. Cellco P'Ship*, 413 N.J. Super. 26 (App. Div. 2010), a case which involved the validity of an arbitration clause in a cellular phone contract. (Pls.' Mot. 22).

satisfaction aimed at fully settling a claim involving a consumer contract could be unlawful under the TCCWNA. The Court finds such a reading implausible in light of New Jersey's "strong policy of enforcing settlements." *See e.g. Brundage v. Estate of Carambio*, 951 A.2d 947, 961 (N.J. 2008). Further, in light of the unambiguous language recited above, Plaintiffs do not make clear how a waiver of the right to pursue claims in connection therewith was unknowing.

In addition, Defendant argues that Plaintiffs make no attempt to cure the second flaw in their TCCWNA claim: the "contract" allegedly violated was not a "consumer contract." (Def.'s Mot. 20) (citing N.J. Stat. Ann. § 56:12-1); *see also Shelton v. Restaurant.com, Inc.*, 2010 U.S. Dist. LEXIS 59111, at *16 (D.N.J. June 15, 2010). Plaintiffs argue that LG "ignored that a 'consumer contract' includes writings required to complete the consumer transaction." (Pls.' Opp'n. 22) (citing N.J.S.A. 56:12-1). However, the applicability of this argument is unclear from Plaintiffs' submission in light of the fact that the parties do not dispute that the purchase and delivery of an LG refrigerator was complete. Similarly, Plaintiffs submit that the offer to modify Affected Models constituted a "contract[] for services." (Pls.' Opp'n. 23). In Reply Defendant argues that the offer to modify Affected Models does not fall within the statutory definition of contract for services because it could not be construed as a "written agreement in which an individual . . . [c]ontracts for services . . . for cash or on credit," as the modification was offered at no charge, and in any event, the Plaintiffs declined. (Def.'s Reply 8) (quoting N.J. Stat. Ann. § 56:12-1). Plaintiffs cite no case in support of their positions regarding consumer contracts. In addition, the applicability of those types of consumer contracts to the facts of this case is strained – namely that the sale and delivery of the refrigerator was completed years prior

and that the modification, which Plaintiffs do not allege they sought, was offered at no charge.[11] Consequently, the Court dismisses Plaintiffs' TCCWNA claim with prejudice.

### C. Violation of the New Jersey Consumer Fraud Act

As discussed in the Court's previous Opinion, Plaintiffs allege that Defendants violated the New Jersey Consumer Fraud Act by engaging in a number of unlawful practices. Plaintiffs now argue that the following conduct violated the SAC: (1) conduct in the sales of the Affected Models with misleading energy labels; and (2) conduct in connection with the Letter Offer and checks. The Court will not address the former as it has determined that it remains barred by the doctrine of accord and satisfaction.

With regard to the latter, the Court previously held that Plaintiffs fail to sufficiently allege an ascertainable loss and noted that their allegations of unlawful conduct were insufficient. As previously explained:

> To state a cause of action under the Consumer Fraud Act, a plaintiff must allege: (1) an unlawful practice by the defendant; (2) ascertainable loss by plaintiff; and (3) a causal nexus between the first two elements—defendant's allegedly unlawful behavior and the plaintiff's ascertainable loss." *New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 11-12 (N.J. Super. Ct. App. Div. 2003) (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 24 (1994)).
>
> Defendant argues that Plaintiffs failed to adequately plea the existence of an "ascertainable loss." Def. Br. at 12. The Court agrees. Plaintiffs do not contest that they received and cashed four checks. *See* Am. Compl. at ¶ 97; *see also* Def. Br. at 12. Plaintiffs argue that these checks were "provided [to] them purported[ly] pursuant to the DOE Settlement" but were not "fair and adequate compensation for the Defendant's misconduct." *See* Am. Compl. at ¶ 139. However, apart from broad allegations that these checks did not comply with the terms of the DOE Settlement Agreement, Plaintiffs do not provide any support for their assertion that these checks were inadequate. *See generally* Am. Compl. at ¶¶ 129-149. Plaintiffs do not demonstrate how the payment calculations were deficient or the extent to which the payments were inadequate. *See generally* Am.

---

[11] As discussed in the Court's previous Opinion, the Offer Letter provided Plaintiffs with explicit instructions on how to schedule a modification. Notwithstanding these instructions, Plaintiffs have alleged neither any effort to schedule a modification nor that such effort would be futile.

> Compl. at ¶¶ 129-149. Under the CFA, Plaintiffs are "required to plead specific facts setting forth and defining the ascertainable loss suffered." *Solo v. Bed Bath & Beyond, Inc.*, No. 06-1908, 2007 U.S. Dist. LEXIS 31088, *9 (D.N.J. April 26, 2007). Accordingly, to the extent Count One relies on Defendant "fraudulently" inducing Plaintiffs to "accept checks and potentially give away their legal right to sue Defendant," it is dismissed without prejudice. *See id.*

(CM/ECF No. 43, 9-10). In addition, claims under the NJCFA must be plead with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. *Frederico v. Home Depot,* 507 F.3d 188, 200, 202–203 (3d Cir.2007); *Parker v. Howmedica Osteonics Corp.,* Civ. No. 07–2400, 2008 WL 141628 at *3 (D.N.J. Jan 14, 2008).

With regard to the unlawful practice element, the Court previously explained that "[t]he contents of Plaintiffs' allegation amount to nothing more than legal conclusions cloaked in the guise of factual allegations." (CM/ECF No. 43, 10-11 n.3). Defendant argues that "Plaintiffs' opposition merely repeats the theories of 'unlawful practice' already found wanting." (Def. Reply. 4-5). Indeed, it does not clearly demonstrate how any new allegations would compel a different result. (Pls.' Opp'n. 14-15). In any event, the Court agrees with LG that Plaintiffs continue to fail to plead an ascertainable loss in connection with LG's Offer Letter and checks. (Def.'s Br. 17-19). In Opposition, Plaintiffs argue that their ascertainable loss consists of one of the following: (1) the price of the affected model as a result of the misrepresentations made at the time of sale; or (2) the amount of excess energy usage in the years since they purchased the Affected Model. (Pls.' Opp'n. 16). Plaintiffs do not point to any means of *quantifying* an ascertainable loss in connection with the Offer Letter and checks or the alleged unlawful practice of fraudulently inducing Plaintiffs to relinquish their rights to sue LG. *See Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005) ("The certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable."). Nor do Plaintiffs address the effect of modifications to the Affected Models. Rather, they merely argue that they have

16

continued to pay electric bills and that payment did not adequately compensate them for their excess energy consumption." (Pls.' Opp'n. 16).  Accordingly, the Court dismisses with prejudice the Perrottas' claim that LG violated the NJCFA by inducing them to waive their right to sue LG.

## IV.    CONCLUSION

For the aforesaid reasons, Defendant's Motion to Dismiss Plaintiffs' SAC is granted in its entirety.  Thus, Plaintiffs' Second Amended Complaint is dismissed with prejudice.  An appropriate Order accompanies this Opinion.


DATED: August 15, 2013                                        /s/Jose L. Linares
                                                          JOSE L. LINARES
                                                          U.S. DISTRICT JUDGE